BURLINGTON FOOD STORE, INC., A NEW JERSEY COR-
PORATION, AND CUMBERLAND FARMS OF NEW JER-
SEY, INC., A NEW JERSEY CORPORATION, APPEL-
LANTS, v. FLOYD R. HOFFMAN, DIRECTOR OF THE
OFFICE OF MILK INDUSTRY, DEPARTMENT OF AGRI-
CULTURE, RESPONDENT, AND UNITED MILK PRO-
DUCERS COOPERATIVE OF NEW JERSEY, NEW JER-
SEY MILK INSTITUTE, INC., *ET AL.*, INTERVENING
RESPONDENTS.

Argued May 3, 1965—Decided July 12, 1965.

*Mr. Grover C. Richman, Jr.* argued the cause for appellants, Burlington Food Store, Inc. and Cumberland Farms of New Jersey, Inc. (*Messrs. Richman, Berry & Ferren,* attorneys; *Mr. Robert W. Page,* on the brief).

*Mr. Donald M. Allman,* Deputy Attorney General, argued the cause for respondent, Floyd R. Hoffman, Director, Office of Milk Industry (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

. *Mr. Harry Polikoff* (of the New York and Pennsylvania Bars) argued the cause for intervening respondents, New Jersey Milk Institute, Inc. and South Jersey Milk Dealers Association (*Mr. Richard W. DeKorte,* of counsel; *Messrs. Jeffers, Walter & Tierney,* attorneys).

*Mr. Lewis P. Dolan, Jr.* argued the cause for intervening respondent, United Milk Producers Cooperative of New Jersey, Inc. (*Messrs. Dolan & Dolan,* attorneys; *Mr. William Marlin Cox,* on the brief).

The opinion of the court was delivered

PER CURIAM. This is an appeal from Order 64-1 promulgated by Floyd R. Hoffman, Director of the Office of Milk Industry, Department of Agriculture (Director), establish-

ing minimum resale prices for the sale of milk. The Director's Order was appealed to the Appellate Division and this Court certified the matter on its own motion before argument there. *R. R.* 1:10–1(a).

Much litigation has arisen out of the Milk Regulation Acts (*N. J. S. A.* 4:12A–1 *et seq.*) over the years since the passage of that act in 1941, *L.* 1941, *c.* 274, *p.* 713. For a recent case involving these same parties, which foresaw the suit *sub judice,* see *Burlington Food Stores, Inc. v. Hoffman,* 82 *N. J. Super.* 452 (*App. Div.* 1964). Two of the more recent cases to reach this Court are *Lampert Dairy Farm, Inc. v. Hoffman,* 35 *N. J.* 205 (1961), and *Lampert Dairy Farm, Inc. v. Hoffman,* 37 *N. J.* 598 (1962). Following the last mentioned case, Governor Hughes, on the advice of his Milk Study Committee, directed that all minimum resale prices of milk be removed. The Director complied with this directive on October 20, 1962. Thereafter, on December 5, 1962, the Legislature, responding to the imminent fear of "destructive price wars and unfair trade competition," enacted the Emergency Milk Control Law of 1962, *N. J. S. A.* 4:12A–59 *et seq., L.* 1962, *c.* 182 (subsequently amended on December 10, 1963, *L.* 1963, *c.* 165). This act was, by its terms, to become inoperative on March 31, 1964. *N. J. S. A.* 4:12A–62. The statement accompanying this statutory amendment to the 1941 act expressly indicated that the legislation was designed:

"(1) To assure to the consumer the benefits which have accrued during the past weeks as a result of fair competition by permitting the Director of the Office of Milk Industry to set price levels, based upon the sale experience of the past 30 days, below which milk and milk products could not be sold;

(2) To prevent unfair competition during the interim period of transition from the previous policy of minimum resale prices; and

(3) To provide the Office of Milk Industry with the funds and a period of time within which it can study and review the problems of the milk industry and obtain the data necessary to prevent sales of milk below cost."

In pertinent part, the amendatory language provides as follows (*N. J. S. A.* 4:12A–60):

"The Legislature finds and determines that there continues to exist in the milk industry *certain temporary conditions* which have created or have threatened to create competitive trade practices which may demoralize the price structure of milk or may demoralize the agricultural interests of the State engaged in the production of milk or may interfere with the maintenance of an ample supply of fresh, wholesome milk. The director, in order to carry out the purposes of this act, is hereby authorized, for such period or periods designated by him but not to extend beyond the date that this act becomes inoperative:

\*     \*     \*     \*     \*     \*     \*     \*

(d) To establish and adjust, from time to time, without the necessity of hearings but upon public notice, the prices below which all licensees or any class thereof may not purchase or sell milk and milk products, provided, however, except as otherwise provided herein:

\*     \*     \*     \*     \*     \*     \*     \*

(2) The resale prices so established within such range and producer prices established under this act are at a level which the director, in his opinion, determines will maintain fair price competition, help insure an ample supply of fresh, wholesome milk and promote orderly marketing conditions." (Emphasis added)

And again (*N. J. S. A.* 4:12A–61):

"Whenever the director shall proceed pursuant to the provisions of section 2 of this act [§ 4:12A–60], he shall, within the period of time designated, undertake such studies, examinations and investigations as necessary to determine what actions should be taken by the Office of Milk Industry under any of its existing powers and authority to eliminate, alleviate or otherwise prevent the continuance of the conditions which required resort to the provisions of this act."

On December 10, 1962, pursuant to the authority granted by said Emergency Milk Control Law of 1962, the Director established certain minimum resale milk prices which continued until March 31, 1964, when Order 64-1 became effective.

In January 1963, shortly after the Director had taken steps to implement the 1962 act, the State Secretary of Agriculture appointed a five-member "Advisory Committee of Economists" (economic advisors), composed of Richard D. Aplin, Associate Professor of Marketing, Department of Agricultural Economics, Cornell University; John W. Carncross, Professor, Department of Agricultural Economics, Rutgers University; Stewart Johnson, Professor of Agricultural Economics,

University of Connecticut; Jesse W. Markham, Professor of Economics, Department of Economics, Princeton University; and C. W. Pierce, Professor of Agricultural Economics, The Pennsylvania State University, to study the milk industry in this State and to advance specific recommendations. At the same time, the Secretary engaged the firm of Case and Company (Case), management consultants from New York City, to study the industry and analyze various costs of operation. Case ran extensive studie's of the cost figures of, and services performed by, some seventeen companies selected from the New Jersey dairy industry, and worked in close co-ordination with the economic advisors.

The economic advisors completed their study of the industry and presented their Report containing certain specific recommendations on November 8, 1963. Following the publication of their report the Director held a public "policy hearing" on November 26 and 27, 1963. At this hearing the report of the economic advisors was discussed, and the Case Report was presented. This hearing afforded all parties an opportunity to raise questions, and resulted in adjustments and refinements by Case which were reflected in supplementary surveys. 'Case eventually filed five separate reports and supplements.

The Director held "price hearings" on 12 days between December 9, 1963 and February 4, 1964. Both the policy and price hearings were attended by representatives of producers, dealers, processors, subdealers and consumers. On the basis of the above hearings the Director filed his findings and promulgated Order 64-1, establishing a new range of minimum prices to be charged for the resale of milk, such rates to be differently calculated in the northern and southern parts of the State. The Director's Order was promulgated on February 19, 1964 to become effective March 31, 1964. A stay of enforcement of the Order was denied by the Appellate Division on March 10, 1964, and by this Court on April 13, 1964.

Plaintiffs, who are jug-sales dealers selling milk for consumption in one-half gallon and one gallon containers, attack

this price Order on four main grounds, arguing that (1) the statutory authority for the Order (*i.e.*, *L.* 1941, *c.* 274) is not valid and cannot provide the basis for its promulgation; (2) the Order and the statute upon which it is founded violate plaintiffs' rights under the due process and equal protection provisions of the New Jersey and United States constitutions; (3) the Order is discriminatory and hence violative of the New Jersey and United States constitutions; (4) the Order is an abuse of the discretion of the Director granted by *N. J. S. A.* 4:12A–21.

We shall consider plaintiffs' arguments in the above order.

I.

■■ The gist of plaintiffs' first argument is that the Director's action cannot be based upon the Milk Regulation Act of 1941 because "the 'emergency' for which purpose it was enacted no longer exists and there is no factual basis for the continuation of this legislation from 1941 to the present." This argument is supplemented by the contention that in any event "the statute was terminated by our Legislature with the expiration date of the 'Emergency Milk Control Act of 1962' on March 31, 1964." While it is true that a law that depends on the actuality of an emergency or a particular state of facts giving rise to the exercise of the power may lose its efficacy when the basic factual conditions no longer obtain, *Jamouneau v. Harner*, 16 *N. J.* 500, 514–515 (1954), there is nothing in the record before us to indicate other than that the emergency found by the Legislature to exist in 1941 continues to date. To the contrary, there is testimony which points to the continuing need to protect the return of the farmer-producer through minimum resale prices and thus effectuate the legislative purpose of avoiding the recurrence of the conditions of "* * * unfair, unjust, destructive and demoralizing practices, heretofore existing or threatened, and presently threatening, in the production, sale and distribution of milk which are likely to result in the demoralization of the agricultural

interests of this State engaged in the production of milk and the creation of conditions inimical to the health of the public of this State; * * *," *L.* 1941, *c.* 274, *p.* 713, which led to the declaration of the emergency conditions found to exist in 1941.

The preamble of *L.* 1941, *c.* 274, *p.* 714, reads in part:

"* * * the period of public necessity for the regulation of the milk industry by the milk control board and the director as herein set forth, during which this act shall be effective shall be until such date as the Legislature may designate to be the termination thereof; * * *."

The primary duty of determining whether the emergency found to have existed in 1941 has ceased is therefore one that should be assumed by the Legislature. And, as stated in *Como Farms, Inc. v. Foran,* 6 *N. J. Super.* 306, 314 (*App. Div.* 1950):

"* * * The legislative declaration of emergency is entitled to be respected in the absence of contrary proof and the fact that such emergency as may currently exist in the field of milk control may be different in kind from that presented in 1941 is not significant. * * *"

■ Additionally, the 1962 act, *L.* 1962, *c.* 182, a supplement to *L.* 1941, *c.* 274, was enacted because of "temporary conditions." The conditions thus referred to quite patently arose from the Director's revocation of minimum resale prices on October 20, 1962, and created a new emergency additional to that found to exist in 1941. The 1962 act did not in specific terms declare that the emergency found to exist in 1941 had ended, nor can we find an intention to repeal that act by implication. In *Henninger v. Board of Chosen Freeholders of County of Bergen,* 3 *N. J.* 68 (1949), this Court said, at *p.* 71:

"* * * Repeals by implication are not favored in the law. In the absence of an express repealer indication of an intention of the Legislature to repeal a prior act must be clear and compelling. There is a strong presumption against such an intention. * * * Wherever possible statutes dealing with the same general subject will be recognized and harmonized. * * *"

See also *State v. States*, 44 *N. J.* 285, 291 (1965); *Loboda v. Clark Tp.*, 40 *N. J.* 424, 435 (1963).

We therefore find that the Legislature did not intend by *L.* 1962, *c.* 182 to declare that the "period of public necessity for the regulation of the milk industry," *L.* 1941, *c.* 274, *p.* 714, had terminated, but to the contrary, reaffirmed by its 1962 action its original conclusion.

## II.

Plaintiffs argue that "the system of fixed minimum resale prices violates the appellants' constitutional rights without justification," relying upon *Nebbia v. New York*, 291 *U. S.* 502, 54 *S. Ct.* 505, 78 *L. Ed.* 940, 89 *A. L. R.* 1469 (1934). There is no basis in the record for plaintiffs' conclusion that the purposes of *L.* 1941, *c.* 274 and Order 64-1 are not reasonably related to the promotion of the public welfare, nor are we persuaded that this consideration does not take precedence over any consequent detriment to free competition necessitated by such emergency price controls. As we recently stated in *National Dairy Products Corp. v. Hoffman*, 40 *N. J.* 475 (1963), at *p.* 487:

> "It has been settled for almost 30 years that the production and distribution of milk are so intimately identified with the public welfare, under the circumstances described in our statute, that reasonable price regulation of its sale has constitutional sanction. * * *"

Our careful perusal of the record before us convinces us that plaintiffs have introduced no evidence to show that the above conclusion is inapplicable now, or that the statute is in any wise arbitrary, capricious or unreasonable. We therefore find plaintiffs constitutional arguments to be without merit.

## III. AND IV.

Plaintiffs' two final arguments can be grouped for the purpose of this opinion. They are bottomed in an attack upon Order 64-1 on the grounds that the order discriminates

against them and that the Director abused his discretion in that there was lacking substantial evidence on the record to support certain aspects of Order 64-1.

We find these contentions patently without merit. The alleged discrimination comes from the manner in which the Director divided the State into two marketing areas, and from the fact that the Director selected the jug-store operators for separate treatment. We find such classifications to be reasonably related to the public welfare and therefore constitutionally valid. *Cf. David v. Vesta Co.,* 45 *N. J.* 301 (1965), and cases cited therein. As to both the alleged discrimination and abuse of discretion it must be remembered that in the promulgation of Order 64-1 the Director had the benefit of independent expert opinion on both the necessity of establishing minimum resale prices in order to protect the farmer-producer, and as to the best manner in which to implement such price controls. He did not rely solely upon the industry's opinion. Our review of the record convinces us that there was adequate unbiased testimony to support his conclusions. Under the circumstances due weight must be given to his expertise. See *Cooley's, etc., Foundation v. Legalized Games, etc., Com.,* 78 *N. J. Super.* 128, 140–141 (*App. Div.* 1963), certif. denied 40 *N. J.* 212 (1963), and cases cited therein.

Order affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.