GARDEN STATE FARMS, INC., A CORPORATION OF NEW JERSEY, BURLINGTON FOOD STORE, INC., A CORPORATION OF NEW JERSEY, AND CUMBERLAND FARMS OF NEW JERSEY, INC., A CORPORATION OF NEW JERSEY, APPELLANTS, v. FLOYD R. HOFFMAN, DIRECTOR OF THE OFFICE OF MILK INDUSTRY, ET AL, RESPONDENTS.

Argued March 7, 1966—Decided April 4, 1966.

*Mr. Nicholas Marlini* argued the cause for appellant Garden State Farms, Inc.

*Mr. Isadore Glauberman* argued the cause for appellants Burlington Food Store, Inc., and Cumberland Farms of New Jersey, Inc. (*Mr. Sheldon A. Weiss,* on the brief).

*Mr. Alan B. Handler,* First Assistant Attorney General, argued the cause for respondent Floyd R. Hoffman (*Mr. Michael Gold,* Deputy Attorney General, of counsel and on the brief; *Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. Morris M. Schnitzer* argued the cause for respondent Dairy Processors and Handlers of New Jersey, Inc. (*Mr. Waldron Kraemer,* on the brief; *Messrs. Kasen, Schnitzer & Kasen,* attorneys).

*Mr. Roland Morris,* of the Pennsylvania bar, argued the cause for respondents The Milk Dealers' Association of Northern New Jersey and South Jersey Milk Dealers' Association (*Messrs. Katzenbach, Gildea & Rudner,* by *Mr. Richard M. Kohn,* attorneys).

The opinion of the court was delivered

PER CURIAM. Before argument in the Appellate Division, we certified this appeal from Official Order No. 66-1 issued by the Director of the Office of Milk Industry on January 13, 1966. This order would increase minimum resale prices of milk, now governed by Order 64-1.[1]

The critical question is whether the Director met the procedural demands of the statute. We must conclude he did not, and hence that the order under review must be set aside.

Upon the application of cooperatives representing dairy farmers and organizations representing milk dealers, the Director gave notice of a public hearing,

"* * * called for the limited purpose of receiving testimony concerning changes in labor costs and mandatory associated changes in the rate of Social Security and Medicare which have occurred subsequent to the period for which basic economic data were completed for the promulgation of Official Order No. 64-1 of this office. These changes affect the cost of processing, distributing and selling milk in the State of New Jersey."

Appellant requested the Director to expand the hearing to embrace all cost factors, which request the Director denied, saying:

"* * * This office is studying all cost factors but this study cannot be satisfactorily completed in a short period of time. I am convinced that in fairness to consumers, the industry and petitioners, a limited hearing should be held at the time announced. Additionally, changing the scope of the hearing would present legal problems connected with the notice of hearing already issued."

In his Findings of Fact and Determination, the Director dealt with the limited scope of the hearing. He said "The decision to limit this particular hearing in such fashion was for the reason that a full study of all of the factors considered

---

[1] We heretofore sustained this order with respect to the attacks leveled upon it. *Burlington Food Store, Inc. v. Hoffman*, 45 *N. J.* 214 (1965).

in Order 64-1 was not necessary at this time," and for these reasons as we cull them from his statement:

(1) "Any significant increase in cost, if not reflected in minimum retail pricing, might well lead to the disruption of the public supply of milk."

(2) The Office of Milk Industry "keeps a constant watch over economic and marketing conditions. As a result, the director and other employees of the Office of Milk Industry have been aware that there have been no significant changes in the other cost elements, other than those which were called for at the time of the hearing. The Office of Milk Industry and its employees are also aware that these other cost elements tend to remain relatively constant."

(3) The original study by Case and Company, Inc., for the Director and used by him in promulgating Order 64-1, took "over a year to complete" and "If the same kind of study were to be made presently, it could not be completed in less than four to six months" and at "a probable cost in excess of $250,000."

The Director added that "To the extent that any party in interest considers cost factors other than labor and related costs to be germane and desires the opportunity to present evidence thereof, I will entertain petitions by any interested parties to hold further hearings on these other cost factors."

The difficulty is that there is no evidence in the record to support the Director's statement that the other cost items have remained constant. If indeed he and the other employees of the Office *know* this to be so, there was no reason to limit the hearing to labor and its related items, for the underlying information could readily be spread testimonially on the record and be subjected to cross-examination; and still upon the same hypothesis, there would be no reason to refuse an opportunity for others to dispute evidentially such proof as the Director and his staff might place on the record concerning non-labor items. Nor, if the Director's Findings of Fact and Determination were meant so to be read, do we see evidence in the record to support a finding that there will be a

disruption in milk supply if there were a time hiatus sufficient for a hearing as to all costs. We do not suggest such a finding could in any event suffice to excuse a hearing as to all costs; we merely note that the record is barren of proof to that effect.

In this connection, we add that the supplemental report made by the Case company for the Director's use in the matter now before us carefully notes the report is limited by the restrictive directive under which it was made and says:

"No adjustment has been made for other factors that may have affected the cost of processing, distribution and sale of milk. Specifically, the following factors were not evaluated as they are beyond the scope of this study as defined by the Director of Office of Milk Industry:

1. Changes in methods of processing, distribution and retailing of milk.
2. Changes in equipment at processing, distribution and retailing levels.
3. Changes in the physical volume of milk processed, distributed and sold through stores.
4. Changes in the price of fluid milk paid to dealers by stores.
5. Changes in the relative retail price of fluid milk in stores versus prices of other food products.
6. Changes in the cost of supplies, packages, rent, taxes, purchased services, and all other items of expense other than labor and supervision.
7. Corporate changes."

It is not clear whether some of these factors may not necessarily bear as well upon the impact of the labor item, but in any event we have before us the fact that the company which made the study was cautious enough to note it did not explore the other cost factors which bear upon minimum prices. In noting that express reservation, we do not read into it an affirmative belief that those factors would alter the result. Rather we point to that reservation to emphasize our own inability to accept an unsubstantiated assertion that those factors may be taken to be constant or that they may fairly be reserved for later study.

It seems appropriate to say again that although the fixing of minimum prices may be "legislative" in nature,

nonetheless the Legislature designedly called for hearing and review as in the case of a judicial matter. *N. J. S. A.* 4:12A–23 requires public notice of a hearing relating to price fixing and explicitly provides that "the director shall issue findings of fact and an order *based upon the evidence adduced at said hearing.*" It is noteworthy, too, that the Legislature has directed that an appeal from an order fixing or refixing any price shall operate as a stay unless the court orders otherwise. *N. J. S. A.* 4:1–35. We think it clear that the Legislature expected the reviewing court to do more than merely express an abiding faith in the agency's expertise; that it wished the court to see to it that price fixing rests upon evidence rather than upon a conclusional assertion of what the Director and his staff know or fear. All of this was emphasized in *Abbotts Dairies v. Armstrong,* 14 *N. J.* 319, 332–333 (1954) ; see also *National Dairy Products Co. v. Milk Control Board,* 133 *N. J. L.* 491, 493–495 (*Sup. Ct.* 1945). And in preparing a record, the agency should realize that a court cannot review something the court cannot understand. The record must speak in terms and details that strangers to the subject can comprehend.

The order under review is set aside.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO.—6.

*For affirmance*—None.