186 N.J. Super. 532 (1982)
453 A.2d 254
DOROTHY DRAKE, ON BEHALF OF HER SON, JAMES DRAKE, APPELLANT,
v.
DEPARTMENT OF HUMAN SERVICES DIVISION OF YOUTH AND FAMILY SERVICES, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 5, 1982.
Decided November 12, 1982.
*533 Before Judges FRITZ, JOELSON and PETRELLA.
Theodore A. Sussan, attorney for appellant.
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent (James J. Ciancia, Assistant Attorney General, of counsel; Steven J. Klein, Deputy Attorney General, on the brief).
The opinion of the court was delivered by FRITZ, P.J.A.D.
Dorothy Drake appeals on behalf of her son James who is presently 14 years old, from a decision of respondent to terminate his residential placement at The Woods Schools and return him to his home. The Final Decision was issued by the Director of the Division of Youth and Family Services and merely "SUSTAINED" the Recommended Decision of the "Adolescent Services Specialist" "for the reasons expressed by [her] in her Recommended Decision."
The mother is a 57-year-old widow suffering from essential hypertension and ulcers who has been long and conscientiously *534 concerned about her ability "to cope, both physically and emotionally, with the care of her multi-handicapped child."[1] We have learned nothing at all about James from the Recommended Decision except for broad generalizations about his "excellent progress at The Woods Schools" and the fact that he "enjoys his relationship with [his mother] and his family." The single conclusion that "he has the ability to be self-sufficient with respect to activities of daily life" is naked: there are no findings at all to support this determination. We are not even offered a definition of the "activities of daily life" and must guess whether this includes participation in group social activities, such as sports or drama, going to church, answering the telephone or watching television. We are relegated to presumptions to assume it even includes daily lavation, teeth brushing and toilet care.
We have learned some things about James from certain of the items comprising the record and from items not included in the record but concerning which appellant has before us a motion urging their inclusion, about which we will say more later. Respondent advises in its brief it "has no objection to the Court considering [at least some] of this material."
James was the product of a "catastrophic" Caesarean birth beset with "various complications." "He required resuscitation and experienced convulsive behavior shortly after birth. It was thought that James at one point would not survive, because of extensive brain damage." We know that he suffers from a "combination of deficits" "related to an early encephalopathy and a prolonged focal seizure" (apparently controlled by persistent and essential medication) and that at the very best his situation is described as mentally retarded. We know that in a neurological re-evaluation, apparently mandated by state regulation, which was part of a five-person team effort all within *535 four to seven months immediately prior to the date of the Recommended Decision, the neurologist discussed James' difficulties at length, expressed satisfaction with "present medications," although he wants to reconsider these in a year's time, and concluded his report with the unqualified assertion, "James will continue to require and benefit from a residential program." (Emphasis supplied). That sentiment was expressly shared by the team's psychologist, who recommended that "Jimmy continue in his current residential placement."
We turn first to appellant's complaint that she was "effectively denied her right to be represented by counsel during the administrative review." Notably, this issue does not argue for a "fair hearing"[2] or assert that the less formal administrative review is inadequate or insufficient. The issue simply and solely protests a denial of a right to counsel. As such it lacks merit. The Director received and considered comments from counsel for appellant and, as a matter of fact, the person who considered the matter and issued the Recommended Decision wrote appellant, with a copy to her lawyer, inviting inquiry respecting the procedure from either her or her lawyer.
It is perhaps unfortunate that when that same administrative official invited appellant to meet with her "to discuss your son James' current program at The Woods Schools," she chose to advise appellant, without sending a copy of this communication to the attorney, "Our meeting would be an informal one and your attorney would not be needed to represent you during our discussion." It is most understandable that a lay person, already deeply distressed by the persistent suggestion of bureaucratic disruption, might regard this as a direction to leave the attorney behind, even if the comment were well intended. Nevertheless, a lack of sensitivity cannot be equated with a denial of the right to counsel, and this issue is without merit.
*536 Appellant's further arguments that the record brought up is incomplete and inadequate and that the decision was "against the weight of the competent evidence" are much more persuasive, at least to the extent that the latter includes and implicates the extraordinary and regrettable absence of findings.
It requires no citation of authority to inspire confidence in our view that it is neither our obligation nor our privilege to substitute our judgment for that of the agency in the management of its affairs. Nor do we here intend or imply any such imperfect action. In fact, the regulations and the guidelines are not even before us for review on this appeal. Although we may be certain that the right of a retarded youngster to the full panoply of state services is every bit as worthy of protection as is the "right to live in a community setting," to which both the Recommended Decision and the State's brief before us attach critical importance, we are not commissioned to vindicate the former right, the Attorney General reminds us in his brief, until such time as we are satisfied the agency action is arbitrary, capricious or unreasonable or not supported by substantial credible evidence in the record as a whole. Henry v. Rahway State Prison, 81 N.J. 571, 579-580 (1980); Campbell v. Civil Service Dep't, 39 N.J. 556, 562 (1963). On the other hand it is "firmly settled" that we are not only privileged but required to overturn arbitrary and capricious action by an administrative (or executive) agency. Worthington v. Fauver, 88 N.J. 183, 204 (1982).
The only rational way in which a court can accomplish the limited task thus imposed upon it is to examine why and under what authority the agency acted, and knowing that, to examine the record as a whole for substantial credible evidence supporting the conduct. Mayflower Securities v. Bureau of Securities, 64 N.J. 85 (1973); DeAngelo v. Alsan Masons, Inc., 122 N.J. Super. 88 (App.Div. 1973), aff'd o.b. 62 N.J. 581 (1973). In the matter before us we have certainly been deprived with respect *537 to findings, and it appears most likely that the record brought up by the statement of items comprising the record (SICR), R. 2:5-4(b), does not catalogue the full scope of that to be considered by a competent factfinder in a case such as this.
Turning to the latter problem first, we hasten to disavow any suggestion that either the author of the Recommended Decision or the Attorney General in his SICR or brief was less than wholly candid. But appellant in her motion to supplement the record and argument respecting its insufficiency presents evidence of irresistible impact causing doubt as to whether the "record" brought up by the SICR does represent the whole reach of that considered in the agency. Tacit (albeit perhaps subconscious) agreement appears in the statement in the State's brief, which refers to some of this material and then advises, "This was not part of the record, but the Division has no objection to the Court considering this material." We believe that if it is relevant and competent, the factfinder should have considered it and that consideration should be reflected in the SICR. If it is not relevant and competent, the State should not agree to complicate this already difficult matter by a willingness to share it with us.
This procedural matter is not to be taken lightly, for we should not, and almost without exception do not, consider matter not in the record below. Wallach v. Williams, 52 N.J. 504, 505 (1968). In fact, the presentation of material not before the lower tribunal but included in the briefs or appendices on appeal subjects the offeror to censure as one who grossly violates appellate practice and rules. Middle Dep't Insp. Agency v. Home Ins. Co., 154 N.J. Super. 49, 56 (App.Div. 1977), certif. den. 76 N.J. 234 (1978).
While the immense burdens upon administrative agencies in these days of broad governmental participation in the affairs of people causes restraint on our part in mandating the procedure, it occurs to us that, where possible, the factfinder might be of service to the agency, the parties and an appellate court by *538 simply listing the sources which he considers as his record and against which his findings may be tested. In the case before us our uncertainty disposes us, in the interest of justice, to a remand to the agency for a certain settling of the things which the factfinder considered, and it will be so ordered.
However, even the best record will be unavailing unless we can also discern the use to which it was put by the factfinder. That is why we have been so insistent over the years respecting the need for factfinding and the bounden duty of the factfinder simply but fully and clearly to tell us why. State in the Interest of J.M., 57 N.J. 442, 445 (1971); State v. Singletary, 165 N.J. Super. 421, 424-425 (App.Div. 1979), certif. den. 81 N.J. 50 (1979); Kenwood Associates v. Englewood Bd. of Adj., 141 N.J. Super. 1, 4 (App.Div. 1976); Reiser v. Simon, 63 N.J. Super. 297, 300-301 (App.Div. 1960). The obligation is no lighter in an administrative agency. Smith v. E.T.L. Enterprises, 155 N.J. Super. 343, 347-349 (App.Div. 1978); Van Realty, Inc. v. Passaic, 117 N.J. Super. 425, 428-429 (App.Div. 1971).
As noted above, the Recommended Decision, adopted by the Director, expresses some conclusions which may in the long run prove sound  or they may not. Without findings, of which there are essentially none, we cannot choose between those two alternatives. This is a sensitive matter. It involves the welfare of a 14-year-old and that of his mother. In a broader sense, of fundamental interest to the judicial system in a country of the fabric of this one, it involves the concerns of society as a whole. We cannot overlook or tolerate this substantial deficiency.
The order is vacated and the matter is remanded to the agency for further consideration. In view of the passage of time and the experience which may have been gained from it, we believe the record should be reopened and brought to date. Thereafter the individual charged with the initial determination shall define the record in terms of things considered and shall accompany the determination with detailed and complete findings of fact.
*539 Remanded for further proceedings consistent with the foregoing. We do not retain jurisdiction.
NOTES
[1] The quotation is from a report of one Dr. A.J. Zagerman, included in the Recommended Decision adopted by the Director of the Division of Youth and Family Services.
[2] See N.J.S.A. 52:14B-1 et seq., and especially 52:14B-9, read in the light of 52:14B-2(b) and N.J.A.C. 10:120-1.6 and 10:120-3.1 et seq.