573 A.2d 203

IN RE THE CERTIFICATE OF NEED APPLICATIONS OF THE VALLEY HOSPITAL, HACKENSACK MEDICAL CENTER, ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER, ENGLEWOOD HOSPITAL.

Superior Court of New Jersey
Appellate Division

Argued October 31, 1989—Decided April 20, 1990.

Before Judges ANTELL, BILDER and ASHBEY.

*Kathleen O. Curley* argued the cause for appellant Hackensack Medical Center.

*Bernard F. Conway* argued the cause for appellant General Hospital Center at Passaic (*Giblin, Combs, Cooney & Conway*, attorneys; *Catherine M. Langlois*, of counsel and on the brief).

*William F. Johnson* argued the cause for appellant St. Joseph's Hospital and Medical Center.

*Klinger, Nicoletette, Mavroudis & Honig*, attorneys for appellant Englewood Hospital, filed a brief in its behalf.

*Theodosia A. Tamborlane* and *Edward A. Zunz* argued the cause for respondent Valley Hospital (*Riker, Danzig, Scherer and Hyland*, attorneys; *Edward A. Zunz* and *Theodosia A. Tamborlane*, of counsel; *Theodosia A. Tamborlane* and *Rosalind Kendellen*, on the brief).

*Michael J. Haas*, Deputy Attorney General, argued the cause for respondent State Commissioner of Health (*Peter N. Perretti, Jr.*, Attorney General of New Jersey, attorney; *James J. Ciancia*, Assistant Attorney General, of counsel; *Michael J. Haas*, on the brief).

The opinion of the court was delivered by

ANTELL, P.J.A.D.

After considering batched applications, *N.J.A.C.* 8:33–2.8, on December 7, 1987, the State Commissioner of Health (Commissioner) granted Hackensack Medical Center (Hackensack) a certificate of need, pursuant to The Health Care Facilities Planning Act, *N.J.S.A.* 26:2H–8, which authorizes the expansion of existing cardiac surgery facilities and programs. She granted a like certificate to St. Joseph's Hospital and Medical Center (St. Joseph's) on December 8, 1987. On January 6, 1988, she granted Valley Hospital (Valley) a certificate of need to establish a new cardiac surgery facility. The application of Englewood Hospital (Englewood) for a certificate of need to establish a new cardiac surgery facility was denied December 7, 1987.

The application process involves three tiers of review: 1) by the health systems agency serving the area, in this case the Northern New Jersey Health Planning Council, which covers the counties of Bergen, Hudson and Passaic; 2) the Statewide Health Coordinating Council; 3) the State Commissioner of Health. *N.J.S.A.* 26:2H–3, 4; *N.J.A.C.* 8:33–1.3(i), (k). The Commissioner's decision to grant a certificate of need is final. The decision to deny one must be approved by the Health Care Administration Board following the grant of a hearing to the rejected applicant. *N.J.S.A.* 26:2H–9; *Application of Overlook Hospital,* 215 *N.J.Super.* 401, 409, 521 *A.*2d 1350 (App.Div. 1987).

Englewood did not appeal from the denial of its application. However, as an "affected person," *N.J.A.C.* 8:33–1.6, it appealed the granting of a certificate to Hackensack and St. Joseph's. Hackensack, St. Joseph's and Englewood appealed from the certificate granted to Valley. The General Hospital Center at Passaic (Passaic), which already has a cardiac surgery facility in operation, appealed the certificate granted to Valley on the ground that as an affected person it was not accorded a fair hearing when it appeared through its president as an objector before the project review committee of the regional health systems agency (Northern New Jersey Health Planning Council) in September 1987 to speak against the Valley application. By letter dated October 25, 1989, Englewood's appeals were withdrawn and are now hereby dismissed. We are therefore left to consider the appeals of Hackensack, St. Joseph's and Passaic from the certificate of need granted to Valley which, for purposes of review, we hereby consolidate.

At the outset, we reject the State's contention that Hackensack, St. Joseph's and Passaic lack standing to appeal the grant of a certificate of need to Valley. "[I]n cases involving substantial public interest, the courts have held that 'but slight private interest, added to and harmonizing with the public interest' is sufficient to give standing." *Elizabeth Fed-*

*eral S. & L. Assn. v. Howell,* 24 *N.J.* 488, 499, 132 *A.*2d 779 (1957). We find applicable herein the following statement made in the foregoing opinion by Chief Justice Vanderbilt:

> Competing banking institutions may be the only persons with sufficient private interest in harmony with the public concern for the safety of savings and bank deposits to bring the attention of the courts to errors of law in an administrative action granting a license to establish a branch contrary to the standards set by the statute delegating authority to so act. If such banking institutions do not have the necessary standing, who then is there who can or will challenge an administrative decision favorable to the applicant? Without standing in the appellants to invoke the power of judicial review, the Commissioner's action favorable to Colonial, right or wrong, proper or arbitrary, takes on a conclusive character to the possible great detriment of the people as a whole. [*Id.* at 501–502, 132 *A.*2d 779].

Since the focus of these appeals is upon the adequacy of the Commissioner's findings as they appear in her January 6, 1988, letter approving the Valley application, we set forth those findings in their entirety:

> My decision to approve your application is based on an evaluation of the factors cited in *N.J.S.A.* 26:2H–8 and *N.J.A.C.* 8:33E–2.1 *et seq.* as follows:
>
> 1. The introduction of Valley Hospital as a new cardiac surgery provider in the health service area would improve access to these services for area residents, particularly with respect to percutaneous transluminal coronary angioplasty (PTCA), and would contribute to the orderly development of cardiac care services in the region.
>
> 2. Approval of a new cardiac surgery service would not negatively impact the quality of care provided at the three existing adult cardiac surgery centers in the region: General Hospital Center at Passaic, Hackensack Medical Center, and St. Joseph's Hospital and Medical Center.
>
> 3. The applicant has documented a sufficient number of referrals for cardiac surgery and PTCA to meet the minimum utilization requirements contained at *N.J.A.C.* 8:33E–2.3(a) 1 and *N.J.A.C.* 8:33E–2.3(d)1.

Our role as an appellate court sitting in review of administrative determinations is to decide " 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility...." *Close v. Kordulak Bros.,* 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965). *See also Mayflower Securities v. Bureau of Securities,* 64 *N.J.* 85, 92–93, 312 *A.*2d 497 (1973). In *Application of Howard Savings*

*Institution of Newark,* 32 *N.J.* 29, 52, 159 *A.*2d 113 (1960) the Supreme Court stated:

> It is axiomatic in this State by this time that an administrative agency acting *quasi*-judicially must set forth basic findings of fact, supported by the evidence and supporting the ultimate conclusions and final determination, for the salutary purpose of informing the interested parties and any reviewing tribunal of the basis on which the final decision was reached so that it may be readily determined whether the result is sufficiently and soundly grounded or derives from arbitrary, capricious or extra-legal considerations.

Three additional practical considerations for making findings of fact are: to prevent judicial usurpation of administrative functions, to help parties plan their cases for rehearing and for judicial review, and to keep administrative agencies within their jurisdiction. *Mackler v. Bd. of Ed. of City of Camden,* 16 *N.J.* 362, 370, 108 *A.*2d 854 (1954). *Quasi*-judicial administrative decisions must set forth "an analytical expression of the basis which, applied to the found facts, led to the holdings below." *Smith v. E.T.L. Enterprises,* 155 *N.J.Super.* 343, 348, 382 *A.*2d 939 (App.Div.1978) (quoting *Benjamin Moore & Co. v. Newark,* 133 *N.J.Super.* 427, 428, 337 *A.*2d 371 (App. Div.1975)). *See Cunningham v. Dept. of Civil Service,* 69 *N.J.* 13, 26, 350 *A.*2d 58 (1975). It is not only the duty of the agency to find the necessary facts, but also to explain its reasoning. In other words, it is obliged "... to tell us why." *Drake v. Human Services Dept.,* 186 *N.J.Super.* 532, 538, 453 *A.*2d 254 (App.Div. 1982). *See also In re Application of Union Community Bank,* 144 *N.J.Super.* 39, 46, 364 *A.*2d 553 (App.Div.1976).

Finally, where the nature of the proofs lies beyond the understanding of lay persons the agency must employ its expertise to assemble and interpret the facts so that they are comprehensible to a person of ordinary understanding. As the Supreme Court said in a somewhat different context in *Garden State Farms, Inc. v. Hoffman,* 46 *N.J.* 595, 600, 218 *A.*2d 637 (1966), "the agency should realize that a court cannot review something the court cannot understand. The record must speak in terms and details that strangers to the subject can comprehend." What is required is a statement of

ultimate facts or statutory conclusions, essentially matters of opinion and judgment to be arrived at by the Commissioner from the factual materials. In such a situation, the function of basic findings is, broadly speaking, to show how and why the Commissioner made up his mind the way he did. All of the evidential data need not be repeated or even summarized, nor need every contention be exhaustively treated. It is sufficient if it can be determined from the document without question or doubt what facts and factors led to the ultimate conclusions reached.

*Application of Howard Savings Institution of Newark*, 32 *N.J.* at 52–53, 159 *A.*2d 113. *See also Riverside General v. N.J. Hosp. Rate Setting Com'n.*, 98 *N.J.* 458, 469, 487 *A.*2d 714 (1985).

In appraising the sufficiency of the findings before us we take note of the statutory and regulatory background against which this appeal is set. The Health Care Facilities Planning Act declares it to be the public policy of this state "that hospital and related health care services of the highest quality, of demonstrated need, efficiently provided and properly utilized at a reasonable cost are of vital concern to the public health." *N.J.S.A.* 26:2H–1. To promote this policy the State Department of Health was designated by the Legislature as the state agency for comprehensive health planning. *Ibid.*

So that health care services are "efficiently provided" and kept at the "highest quality" to meet "demonstrated need," the Legislature provided for a system wherein existing health care services and demand therefor are carefully scrutinized before any changes or expansions thereof are made. Thus, *N.J.S.A.* 26:2H–7 provides:

No health care facility shall be constructed or expanded, and no new health care services shall be instituted after the effective date of this act except upon application for and receipt of a certificate of need as provided by this act.

The grounds upon which a certificate of need may be issued are specified in *N.J.S.A.* 26:2H–8 as follows:

No certificate of need shall be issued unless the action proposed in the application for such certificate is necessary to provide required health care in the area to be served, can be economically accomplished and maintained, and will contribute to the orderly development of adequate and effective health care services. In making such determinations there shall be taken into consideration (a) the availability of facilities or services which may serve as alternatives or

substitutes, (b) the need for special equipment and services in the area, (c) the possible economies and improvement in services to be anticipated from the operation of joint central services, (d) the adequacy of financial resources and sources of present and future revenues, (e) the availability of sufficient manpower in the several professional disciplines, and (f) such other factors as may be established by regulation. The commissioner shall cause appropriate surveys and studies to be made concerning the need for health care facilities and keep current records and statistics thereon by designated areas or regions of the State.

Following the filing of a report by a Task Force appointed by her in May 1986 to examine the cardiac services regulations, the Commissioner determined that

[e]very effort should be made to encourage regionalization of care in the field of open heart surgery in order to provide the best possible diagnostic, therapeutic and post operative facilities and quality of patient care without wasteful duplication of facilities and personnel, or uneconomical under-utilization of otherwise excellent centers.

[*N.J.A.C.* 8:31–1.1]

The Commissioner concluded at that time that "the development of new [open heart surgical] units except at the medical schools should be discouraged until the facilities of existing centers become saturated." *N.J.A.C.* 8:31–1.2. She also determined that a population base of one million was necessary to justify a single cardiac surgical unit, *ibid.*, and that a "regional approach to the provision of cardiac services" was required. *N.J.A.C.* 8:33E–2.1(a).

■ Within this legislative and administrative setting it is our view that the Commissioner's conclusory determinations fail to demonstrate that Valley's application was properly granted. They convey only the Commissioner's ultimate opinion that the certificate of need would make cardiac services more accessible to area residents, would not reduce the quality of patient care at other cardiac centers in the region and that Valley will have enough cardiac cases to meet minimum utilization requirements. Nowhere does the Commissioner make a factually supported reasoned statement that the certificate is "necessary" to provide required health care in the area to be served, and that it can be "economically accomplished and maintained." As the court stated in *Riverside General v. N.J. Hosp. Rate Setting Com'n.*, 98 *N.J.* 458, 468, 487 *A.*2d 714 (1985), "[w]ith

respect to determinations under the Health Care Act in particular, the grounds for the agency's determination must be both adequately supported by the record and fully explained."

Even where the administrative action is "legislative" in nature the agency's duty to make adequate findings remains:

We think it clear that the Legislature expected the reviewing court to do more than merely express an abiding faith in the agency's expertise; that it wished the court to see to it that price fixing rests upon evidence rather than upon a conclusional assertion of what the Director and his staff know or fear.

*Garden State Farms, Inc. v. Hoffman,* 46 *N.J.* at 599–600, 218 *A.*2d 637.

Absent also from the Commissioner's finding is any indication that she followed the statutory mandate to take into consideration the availability of alternative facilities or services, the need for special equipment or services in the area, possible economies and improvement in services which might result from joint central services, the adequacy of present and future financial resources, and the availability of sufficient professional personnel. As in *Riverside General, supra,* a case which also arose under the Health Care Facilities Planning Act, it must here be said that the Commissioner of Health violated the " 'time-tested precept' that the grounds of an agency's decision be fully disclosed." *Id.,* 98 *N.J.* at 470, 487 *A.*2d 714.

Although we refrain from remanding to a state agency where, despite the deficiencies of its findings we nevertheless "understand fully the meaning of the decision and the reasons for it," *Application of Howard Savings Institute of Newark,* 32 *N.J.* at 53, 159 *A.*2d 113, that condition is not satisfied in the case before us. It is not as though the statutory criteria were undisputed. The Valley application was opposed on numerous counts. It was asserted, for example, that it would cause shortages in the available pool of nurses and that the volume of Hackensack's cardiac cases would decrease by 24%. Passaic in particular also advised that if the Valley application were granted, it would lose the services of Dr. Bruce Mindich, a surgeon who handled 192 of the 458 cardiac operations per-

formed at Passaic in 1986. Dr. Mindich had apparently agreed to relocate to Valley if Valley's application were approved.

Not to be disregarded is the fact that as part of the review process leading to the Commissioner's decision the recommendation was made by the state staff that the Valley application not be granted. It did so in the following terms:

There are alternative services in the health service area that are able to meet the existing and projected demand for these cardiac services more efficiently and effectively than Valley Hospital. The introduction of Valley Hospital as a new cardiac surgery provider in the health service area would not appreciably improve access to these services for area residents, would not result in cost savings to the health care system, and would not contribute to the orderly development of cardiac care services in the region. Approval of a new cardiac surgery service would negatively impact all three existing adult cardiac surgery centers, particularly the Hackensack Medical Center.

No comment was made by the Commissioner upon the foregoing recommendation of her own staff against granting Valley's application. Nor, in fact, does it even appear to have been noted.

We also observe that in the Commissioner's letter of December 7, 1987, granting Hackensack's application she stated that "there is no documentation that there is need for more than one additional cardiac operating room in Bergen County." Nevertheless, no explanation is offered as to the basis upon which she granted the certificate of need authorizing a new cardiac surgical unit at Valley, which is located in Ridgewood, Bergen County, only 30 days later without receiving any further information concerning need for the additional unit at Valley.

The matters upon which we touch make it essential that the Commissioner provide some explanation of the reasoning and factual data by which she reached her determination so that we can decide whether the important legislative policies confided to the Commissioner's responsibility and the Commissioner's own regulatory standards, have been followed and whether the Commissioner's determination is supported by the evidence.

While we recognize the important role of agency expertise on judicial review of administrative action, it is clear that we must

have further findings from the Commissioner before we can affirm the issuance of a certificate of need to Valley. At minimum, comment should demonstrate a factually supported finding that "such certificate is *necessary* to provide required health care in the area to be served, can be economically accomplished and maintained, and will contribute to the orderly development of adequate and effective health care services." (Emphasis ours). *N.J.S.A.* 26:2H–8.

The Commissioner's further comments should reflect her awareness, at least, of staff's negative recommendation and should provide some reasonable explanation of the apparent inconsistency between the remark in her December 7, 1987, letter to Hackensack regarding the lack of "documentation that there is need for more than one additional cardiac operating room in Bergen County" and her action in authorizing a new cardiac surgical unit in Bergen County so shortly after.

We would also expect that the Commissioner's further comment will take note of the fact that the granting of Valley's application marks an apparent departure from her announced regulatory policy favoring regionalization of cardiac facilities, with a population base of one million for each cardiac surgical unit, and discouraging the development of new units except at medical schools "until the facilities of existing centers become saturated." *N.J.A.C.* 8:31–1.2. By focusing on the foregoing questions we do not mean to suggest our indifference to the other criteria of *N.J.S.A.* 26:2H–8 which must "be taken into consideration," or to imply that these should be overlooked on the remand.

█ On its appeal, Passaic argues that the Commissioner erred in denying it a trial-type hearing in its status as an objector to the Valley application. It complains that its president was allowed only five minutes to address the committee at the end of a long evening. We affirm on the appeal substantially for the reasons stated by the Commissioner in her letter to Passaic's counsel, Thomas P. Lospin, Esq., dated February

22, 1988. *See also Application of Overlook Hosp.*, 215 *N.J.Super.* 401, 521 *A.*2d 1350 (App.Div.1987), as to Passaic's status as an objector. We find no merit to its claim that it has been denied either due process or equal protection of the laws. *See Elizabeth Federal S. & L. Assn. v. Howell,* 24 *N.J.* 488, 505, 132 *A.*2d 779 (1957). To entitle Passaic to a hearing it must be shown that it has a constitutionally protected interest. *Cunningham v. Dept. of Civil Service,* 69 *N.J.* 13, 19–20, 350 *A.*2d 58 (1975); *In re Crowley,* 193 *N.J.Super.* 197, 208–209, 473 *A.*2d 90 (App.Div.1984). Its position as a potential competitor of Valley does not confer upon it a property right so as to entitle it to a trial-type hearing.

The demand Passaic makes for treatment equal to Englewood's is based on a mistaken premise. Englewood was entitled to have the Health Care Administration Board review the Commissioner's determination to deny that hospital a certificate of need. It was not entitled to challenge on that hearing, as Passaic seems to think it was, the certificate granted to Valley.

On the appeal by Hackensack, St. Joseph's and Passaic, the matter is remanded to the Commissioner for full reconsideration followed by a statement of findings and conclusions in accordance with this opinion. The Commissioner is directed to serve copies of her findings and conclusions upon Valley, Hackensack, St. Joseph's, Passaic and the attorney general and file them with this court within 45 days from the filing date of this opinion. Upon receipt thereof we will consider the necessity for further briefs to deal with such issues as may be raised by the Commissioner's reconsidered decision, findings and conclusions. We retain jurisdiction.

On the separate appeal by Passaic we affirm.