258 N.J. Super. 411 (1992)
609 A.2d 1305
HOLY NAME HOSPITAL, PLAINTIFF-APPELLANT,
v.
NEW JERSEY HEALTH CARE ADMINISTRATION BOARD AND COMMISSIONER FRANCES DUNSTON, M.D., NEW JERSEY DEPARTMENT OF HEALTH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 27, 1992.
Decided July 23, 1992.
*413 Before PETRELLA, R.S. COHEN and A.M. STEIN, JJ.
Theodosia A. Tamborlane argued the cause for appellant (Theodosia A. Tamborlane and Barry Fulmer on the brief).
Darcy A. Saunders, Deputy Attorney General, argued the cause for respondents (Robert J. Del Tufo, Attorney General, attorney, Joseph L. Yannotti, Assistant Attorney General, of counsel, and Darcy A. Saunders on the brief).
The opinion of the court was delivered by COHEN, R.S., J.A.D.
Holy Name Hospital is a 370-bed acute care hospital located in Teaneck. It submitted to the New Jersey Department of Health an application for a Certificate of Need (CN) for the establishment of a magnetic resonance imaging (MRI) facility in a Health Service Area (HSA) consisting of Bergen and Passaic counties. Holy Name's application was part of the July 15, 1989, competitive review cycle. It was considered along with other CN applications for an MRI facility that was to be located in the same HSA. The other applications were submitted by the Passaic Consortium, a partnership of two hospitals and a profit-making corporation, and Wayne General Hospital/Barnert Memorial Hospital, which later dropped out. At the time, the HSA had a population of about 1.3 million people.
The applications were considered according to regulations recently adopted by the Department to deal with the relatively *414 new subject of MRI services, and their orderly establishment. N.J.A.C. 8:33J-1.1 et seq. The regulations were untested ones which were modeled on ones developed for the same purpose in New York. They established an expected need of one MRI unit for each 420,000 population within an HSA. N.J.A.C. 8:33J-1.2. After the regulations were adopted, the 1/420,000 ratio came under some criticism as understating the need for MRI units. The applications, however, were entertained and decided according to that benchmark.
Based on the 1/420,000 ratio, the Bergen/Passaic HSA had a need for 3 MRI units, two of which were already in place and operating. One was at Englewood Hospital; the other was in Passaic County, and was run by MRI Northern, a partnership in which Holy Name had an interest. Thus, the applications of Holy Name and the Passaic Consortium competed for the one available CN. An additional one could be granted, according to the Department, but only on a showing that it would "appreciably improve access to [MRI] service and ... contribute to the orderly development of MRI services in the [HSA]."
The North Jersey Health Planning Council, the first level of review, endorsed the applications of both Holy Name and the Passaic Consortium. The next referral was to the State Staff of the Statewide Health Coordinating Council. The State Staff recommendation was to deny Holy Name's application. Its reasons were:
1. The applicant is not in compliance with minimum requirements for the initiation of MRI services contained in N.J.A.C. 8:33J-1.1 et seq.

2. The applicant has failed to demonstrate an ability to initiate this new MRI service and to achieve acceptable utilization levels, based on an analysis of factors at N.J.A.C. 8:33J-1.2 (Minimum Population Base), N.J.A.C. 8:33J-1.3 (Minimum Utilization Standards), and N.J.A.C. 8:33J-1.6 (Competitive Areawide Criteria), to a greater degree than other competing applicants from the health service area.
3. Approval of additional MRI services over and above that permitted under the existing MRI rule would not appreciably improve access to this service and would not contribute to the orderly development of MRI services in the health service area.
*415 The State Staff recommended granting the Passaic Consortium's application.
The Statewide Health Coordinating Council disagreed with the State Staff, and decided to endorse both applications to the Commissioner of Health. On November 22, 1989, the then Commissioner granted the application of the Passaic Consortium. That was a final agency decision, and therefore appealable to this court as of right. N.J.S.A. 26:2H-9; R. 2:2-3(a)(2). Holy Name did not appeal.
On November 28, the Commissioner denied Holy Name's application. Her two-page letter of decision explained her reasons in precisely the same words that were used by the State Staff to explain its negative recommendation to the Statewide Health Coordinating Council, a recommendation which the Council rejected. Not a word was added, subtracted, or changed.
The Commissioner's denial was not a final decision because the Commissioner does not have the power to deny CN applications, but only to recommend denial to the Health Care Administration Board (HCAB). N.J.S.A. 26:2H-9. It was therefore not immediately appealable as of right. R. 2:2-3(b). Holy Name did not seek interlocutory review; rather, it exercised its right to ask for an administrative hearing. N.J.A.C. 8:33-3.6. After conducting a hearing, the Administrative Law Judge (ALJ) issued an Initial Decision on June 5, 1991, upholding the Commissioner's decision to deny Holy Name's application. On July 31, 1991, HCAB informed Holy Name that it had decided to adopt the ALJ decision and to affirm the Commissioner's denial of the CN application. Holy Name then appealed. It was eight months after the CN was granted to the Passaic Consortium, and Holy Name was out of time to appeal the Commissioner's grant. R. 2:4-1(b); 2:4-4(a).
One of the arguments made by Holy Name before us is that the Commissioner's denial was insufficiently explained in her bare-bones letter. The objection is valid. The letter is *416 brief, conclusory, and unrevealing. Its words are those of the State Staff investigator who had initially recommended denial of Holy Name's application. There is nothing in the Commissioner's letter that hints at an independent review of the application, or the factual material on which the State Staff relied. There is nothing in the letter that suggests an application of the Commissioner's own judgment to the matter, either by way of verifying the facts found by the State Staff, or by way of making expert policy judgments whether Holy Name was qualified for a CN, and whether the 1/420,000 ratio should be exceeded. For all we can tell from the Commissioner's statement, her decision to recommend denial of Holy Name's application was effectively determined at the State Staff level, and was not subjected to any critical judgment thereafter. If our criticism is inaccurate, it is only because the Commissioner was so closed-mouthed about her decision.
The fatal insufficiency of this kind of Department of Health decision making was thoroughly established in In re Valley Hospital, 240 N.J. Super. 301, 573 A.2d 203 (App.Div. 1990), certif. denied, 126 N.J. 318, 598 A.2d 879 (1991). We will not recite our opinion in that case, but recommend a full reading of it. The Department can not seriously argue that the Commissioner's denial satisfies the standards of Valley Hospital. Instead, it argues that the standards do not apply because the Commissioner granted Valley Hospital's application, but denied Holy Name's. The difference, the argument runs, is that a grant is a final decision, subject only to appeal to the Appellate Division, while a denial is subject to further hearings in the Office of Administrative Law and review by HCAB, whose decision is then reviewable here.
The argument is incorrect. The test in this court of the validity of a grant by the Commissioner is one of reasonableness, giving the Commissioner the benefit of deference for the fact finding expertise and policy judgment to which the decision is entitled. Henry v. Rahway State Prison, 81 N.J. *417 571, 579-80, 410 A.2d 686 (1980). However, a Commissioner's denial is reviewed before HCAB, and necessarily before the Office of Administrative Law, by the same test of reasonableness. HCAB does not consider the matter anew, but solely decides if the Commissioner's decision was a reasonable one. In re Application of Overlook Hosp., 215 N.J. Super. 401, 413, 521 A.2d 1350 (App.Div. 1987). In the present case, the determination of the ALJ, which was adopted by HCAB, was not that Holy Name's application should be denied, but rather that the Commissioner's decision to deny was not unreasonable.
Thus, HCAB occupies the same review position when the Commissioner denies as this court occupies when the Commissioner grants. As a result, both HCAB and the ALJ, who acts as HCAB's hearing officer, need the Commissioner's findings and conclusions as much as we do, and for the same reasons. Without them, it is impossible for either HCAB or the ALJ to tell how the Commissioner dealt with basic information generated by the State Staff which may simply have been wrong, or basic investigative methodology which may well have been faulty. If the bad data and faulty methodology were not seriously considered, or discarded because of their faults, then they did not affect or invalidate the decision. Without some hint, however, as to what information the Commissioner thought significant and worthy of reliance, it was impossible for the ALJ or HCAB to say if the ultimate decision was a reasonable one. We now operate under the same disability. None of us can tell if early glitches in the process counted.
In Valley Hospital, supra, the solution for the problem was to remand the whole matter, including both the grant of the CN to Valley Hospital and the denials of CNs to the other competitors, back to the Commissioner "for full reconsideration followed by a statement of findings and conclusions." 240 N.J. Super. at 312, 573 A.2d 203. Such a course can not be taken here, except in part. The reason is that the Passaic Consortium has its Certificate of Need; the validity of the *418 decision to grant it was not appealed, and therefore is not before us. Thus, the issue whether the Commissioner erred in preferring the Passaic Consortium's application to Holy Name's is not one we can deal with.
Much of the problem lies in the procedural dichotomy created by N.J.S.A. 26:2H-9. It is that, where one of a group of batched applications is granted, the grant is immediately appealable to this court, but the accompanying denials of the competing applications are subject to hearing and review by HCAB. The bifurcation of review times and paths creates unnecessary difficulties for the parties to these application proceedings. As Judge Antell said in Overlook Hospital, supra, 215 N.J. Super. at 417, 521 A.2d 1350:
A more cohesive statutory scheme in respect of the Commissioner's decision on batched applications and a single review thereof would considerably alleviate much of the procedural anomaly, both on the administrative level and in this court.
We had previously discussed this problem and suggested the procedure for the disappointed CN applicant to follow in National Nephrology Foundation v. Dougherty, 138 N.J. Super. 470, 351 A.2d 392 (App.Div. 1976). It was to appeal the CN grant and, at the same time, to seek leave to appeal the Commissioner's interlocutory denial of the other application. Id. at 478-79, 351 A.2d 392. We said, "The likelihood is that leave to appeal would be granted in such case since the grant of the certificate to one party is inextricably bound up with the denial of a certificate to a second party or parties." Id. at 479, 351 A.2d 392. The result would be to cut HCAB out of the review process. That fact may have given the Overlook Hospital court pause, and may have led it to limit itself to expressing agreement "with the perception of National Nephrology ... that much of the difficulty here is attributable to the dichotomy of N.J.S.A. 26:2H-9." Overlook Hosp., supra, 215 N.J. Super. at 417, 521 A.2d 1350. It did not mention National Nephrology's procedural solution.
*419 That procedure was not followed here. If it had been, joined appeals of the November 1989 decisions of the Commissioner might have been before us for review in much less than the two-and-one-half years this appeal took to wend its way to this point.
It is the case, however, that one of the decisions the Commissioner had to make in November 1989 was whether to grant Holy Name relief from the 1/420,000 ratio, and to grant it an additional MRI unit on the grounds that it would appreciably improve access to MRI service and would contribute to its orderly development in the HSA. That is a decision that can be made now without collaterally attacking the CN of the Passaic Consortium. It would not, however, serve the public interest to have the new Commissioner make such a decision on the basis of a three-year-old record, full of four, five, and six-year-old facts, on the basis of a State Staff investigation whose flaws may have been large or may have been small, and on the basis of regulations whose initial virtues have been subjected now to years of experience.
We therefore reverse the HCAB decision upholding the Commissioner's denial of Holy Name's 1989 application for a CN for an MRI unit, and we remand to the Commissioner for the purpose of receipt and entertainment of a new application by Holy Name, based on such updated presentation as Holy Name chooses to make. The Commissioner's review shall be based on such Department procedures and regulations as are currently applicable, and on such thorough and qualified investigations as are appropriate. The application shall not be batched.
We recognize that the solution we reach does not satisfy all of the needs of any of the participants in these matters. However, we point to the continuing and uncorrected anomaly *420 in N.J.S.A. 26:2H-9, and to Holy Name's decision not to avail itself of the suggested solution of National Nephrology. We also remind the Commissioner of the obligation to the public and to CN applicants not only to decide these matters, but to do so in a way that allows HCAB and this court to effectively review the decision.