272 N.J. Super. 208 (1994)
639 A.2d 729
ASSOCIATES IN RADIATION ONCOLOGY, P.A., PLAINTIFF-APPELLANT,
v.
BRUCE SIEGEL, M.D., M.P.H., ACTING COMMISSIONER OF HEALTH, DEPARTMENT OF HEALTH, STATE OF NEW JERSEY, JOHN R. GLASSBURN, M.D., RADIATION THERAPY ASSOCIATES OF GLOUCESTER COUNTY, L.P., CANCER THERAPY ASSOCIATES OF NEW JERSEY, INC., AND WOODBURY MEDICAL CENTER ASSOCIATES, A GENERAL PARTNERSHIP, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 4, 1994.
Decided March 8, 1994.
*210 Before Judges DREIER, BROCHIN and KLEINER.
Sacharow, Adler, Gold, Taylor & Keyser, attorneys for appellant (E. Hunter Taylor and Nancy D. Gold, on the brief).
Poplar & Eastlack, attorneys for respondents John R. Glassburn, M.D., Radiation Therapy Associates of Gloucester County, L.P., and Cancer Therapy Associates of N.J., P.A. (Maria M. Lepore, on the brief).
Deborah T. Poritz, Attorney General, attorney for respondent Bruce Siegel, M.D., M.P.H., Acting Commissioner of Health (Joseph L. Yannotti, Assistant Attorney General and Mary C. Jacobson, Assistant Attorney General, of counsel; Darcy A. Saunders, Deputy Attorney General, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff appeals from the Acting Commissioner of Health's determination that a Certificate of Need is not required for the construction and installation of radiation equipment by Radiation Therapy Associates at the Woodbury Medical Center. Plaintiff, Associates in Radiation Oncology (Associates), operator of a competing facility at Cooper Hospital in Camden, contends that the proposed facility is governed by at least three sections of the Certificate of Need statute. We were asked to withhold our decision until February 7, 1994 while the parties explored settlement. We find that the provisions of N.J.S.A. 26:2H-7a, b, and e appear to be applicable, and that the Acting Commissioner's failure to address these sections or to provide a factual basis for the applicability of N.J.S.A. 26:2H-7c and its exception require that we remand so that these issues can be addressed.
On September 24, 1991, Associates notified the New Jersey Department of Health that an unapproved radiation oncology facility was being constructed at the Woodbury Medical Center. Although the Department of Health indicated that it would investigate, *211 apparently it did not. On May 18, 1992, Associates brought suit against the Department of Health and the various entities involved in the construction of the new facility. Defendants moved for dismissal. After a hearing, the trial judge refused to grant either party relief and stayed discovery until further order of the court. On November 12, 1992, the Department of Health issued its determination that a Certificate of Need was unnecessary. The trial judge then dismissed the pending litigation. Plaintiff filed a Notice of Appeal only from the administrative order, not from the decision of the trial court.[1]
Associates is a New Jersey corporation engaged in the practice of radiation oncology at a licensed radiation oncology facility at Cooper Hospital/University Medical Center in Camden, New Jersey.[2] Defendants are Bruce Siegel, M.D., M.P.H., who was the Acting Commissioner of Health at the time the determination was issued; the New Jersey Department of Health; Dr. John R. Glassburn; Radiation Therapy Associates of Gloucester County; Cancer Therapy Associates of New Jersey, Inc.[3]; and Woodbury Medical Center Associates.[4]
Dr. Glassburn, through his professional corporation, Cancer Therapy Associates of New Jersey, Inc., entered into a License and Services Agreement with Associates Limited Partnership. The agreement jointly designated Associates Limited Partnership and its limited partner, Advanced Diagnostic Imaging Associates, *212 as "Manager."[5] Under the agreement, Manager is to construct or lease a medical office as well as acquire and install the equipment necessary for the oncology practice. Manager is also to be responsible for the "business aspects" of the practice, including maintaining the premises, paying utilities and taxes, procuring insurance, billing, collection, accounting, record keeping and hiring. In return for these services, Manager is to receive 70% of the total fees collected by the practice.
The facility is to be located at the Woodbury Medical Center, which is connected by a walkway to Underwood Memorial Hospital. Underwood owns the property on which Woodbury Medical Center is being constructed. Dr. Glassburn is a general partner of Woodbury Medical Center Associates which is financing the construction of the Woodbury Medical Center.

I
Associates has standing to appeal the Acting Commissioner's determination that a Certificate of Need is not required for the Woodbury facility. In In re Valley Hospital, 240 N.J. Super. 301, 573 A.2d 203 (App.Div. 1990), certif. denied, 126 N.J. 318, 598 A.2d 879 (1991), we held that two hospitals which had received Certificates of Need for cardiac surgery facilities and one hospital which already had a cardiac surgery facility had standing to appeal the grant of a Certificate of Need to a fourth facility. We noted that when a case involves a substantial public interest, "`but slight private interest, added to and harmonizing with the public interest' is sufficient to give standing." Id. at 304, 573 A.2d 203 (quoting Elizabeth Fed. Sav. and Loan Ass'n v. Howell, 24 N.J. 488, 499, 132 A.2d 779 (1957). We noted that a competitor may be the only entity with "`sufficient private interest in harmony with the public concern'" to bring errors in an administrative action to the court's attention. Id. at 305, 573 A.2d 203 (quoting Elizabeth *213 Fed. Sav. and Loan Ass'n, supra, 24 N.J. at 501-502, 132 A.2d 779). Finally, we concluded that if a competitor did not have standing, no one would and "`the Commissioner's action ... right or wrong, proper or arbitrary, [would take] on a conclusive character to the possible great detriment of the people as a whole.'" Id. at 305, 573 A.2d 203 (quoting Elizabeth Fed. Sav. and Loan Ass'n, supra, 24 N.J. at 501-502, 132 A.2d 779).
The instant case presents the same scenario. If Associates in Radiation Oncology cannot challenge the Acting Commissioner's determination, who can? Defendants attempt to distinguish In re Valley Hospital on the basis that, in that case, the Commissioner of Health granted a Certificate of Need while in the present case, the Acting Commissioner merely determined that a Certificate of Need was not necessary. The result is, however, the same: Construction of the facility will go forward. Accordingly, plaintiff must have standing under In re Valley Hospital, supra, 240 N.J. Super. 301, 573 A.2d 203.

II
N.J.S.A. 26:2H-7, governing Certificates of Need, provides:
No health care facility shall be constructed or expanded, and no new health care service shall be instituted after the effective date of [N.J.S.A. 26:2H-1 et seq.] except upon application for and receipt of a certificate of need as provided by [N.J.S.A. 26:2H-1 et seq.]. No agency of the State or of any county or municipal government shall approve any grant of funds for, or issue any license to, a health care facility which is constructed or expanded, or which institutes a new health care service, in violation of the provisions of [N.J.S.A. 26:2H-1 et seq.].
Except as provided in [N.J.S.A. 26:2H-7a and 26:2H-7b], the provisions of this section shall apply to:
a. The initiation of any health care service as provided in section 2 of [N.J.S.A. 26:2H-2];
b. The initiation by any person of a health care service which is the subject of a health planning regulation adopted by the Department of Health;
c. The purchase by any person of major moveable equipment whose total cost is over $1 million;
d. The expenditure by a licensed health care facility of over $1 million for modernization or renovation of its physical plant, or for construction of a new health care facility; and

*214 e. The modernization, renovation or construction of a facility by any person, whose total project cost exceeds $1 million, if the facility-type is the subject of a health planning regulation adopted by the Department of Health.
* * * * * * * *
For the purposes of this section, "health care service" shall include any service which is the subject of a health planning regulation adopted by the Department of Health, and "person" shall include a corporation, company, association, society, firm, partnership and joint stock company, as well as an individual.
* * * * * * * *
The requirement to obtain a certificate of need for major moveable equipment pursuant to subsection c. of this section shall not apply if a contract to purchase that equipment was entered into prior to July 1, 1991.
In his letter determining that a Certificate of Need was not required for the Woodbury facility, the Acting Commissioner of Health concluded:
As the documents which you presented to the Department predate July 1, 1991, the purchase of the equipment and construction of the building to house that equipment are exempted from the requirements imposed on health care facilities by the Health Care Cost Reduction Act, P.L. 1991, c. 187. That is, the physicians who have entered into the agreement with RTA do not require a Certificate of Need from the Commissioner of Health for the establishment of their radiation oncology practice in a medical office building to be erected on property adjacent to and owned by Underwood Memorial Hospital in Woodbury, New Jersey.
The Acting Commissioner apparently determined that the Underwood facility was governed entirely by N.J.S.A. 26:2H-7c and was thus exempt from the Certificate of Need requirement solely because the contracts for the equipment were entered into prior to July 1, 1991.
It is not clear, however, that the provisions of N.J.S.A. 26:2H-7c apply. As previously noted, that section requires a Certificate of Need for "[t]he purchase by any person of major moveable equipment whose total cost is over $1 million." The contract submitted in defendants' appendix totals substantially less than $1 million. Furthermore, Advanced Diagnostic Imaging represented to the Department of Health that the total estimated expenditure for the major moveable equipment was going to be $900,000. Finally, defendants continue to maintain that the major moveable equipment cost under $1 million, but state that for the purposes of *215 their brief, they will proceed in accordance with the Acting Commissioner's determination.
The Commissioner did not, however, specifically find that the equipment cost over $1 million, although by reference to N.J.S.A. 26:2H-7c, he impliedly found that the cost was expected to exceed $1 million. Perhaps he included peripherals and installation costs. It is also not clear that defendants met the July 1, 1991 exemption date provided in N.J.S.A. 26:2H-7. Advanced Diagnostic Imaging represented to the Department of Health that the major moveable equipment to be purchased was a linear accelerator, a simulator, and a treatment planning computer. Defendants maintain that the contract for the linear accelerator was executed on June 28, 1991, despite some later amendments. Plaintiff alleges, however, that the contract for the linear accelerator was entered into sometime after July 1, 1991. No date was given for the contract for the simulator or the treatment planning computer. Because the Acting Commissioner did not make any specific findings regarding what equipment was purchased, the cost of the equipment or the date of its purchase, it is difficult for us to judge the reasonableness of his determination. We therefore must remand for specific findings of fact on these issues.
Furthermore, even if N.J.S.A. 26:2H-7c applies, it does not operate to the exclusion of the other sections of the statute. Therefore, the Acting Commissioner's failure to address N.J.S.A. 26:2H-7a, b or e, appears arbitrary. Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963).
N.J.S.A. 26:2H-7a provides that a Certificate of Need is required prior to "[t]he initiation of any health care service as provided in [N.J.S.A. 26:2H-2]." N.J.S.A. 26:2H-2b defines "health care service" as
the preadmission, outpatient, inpatient and post-discharge care provided in or by a health care facility, and such other items or services as are necessary for such care, which are provided by or under the supervision of a physician for the purpose of health maintenance organizations, diagnosis or treatment of human disease, pain, injury, disability, deformity or physical condition....
*216 In the present case, the Commissioner of Health concedes that radiation oncology falls within the definition of a health care service under N.J.S.A. 26:2H-2b. Accordingly, initiation of this service would require a Certificate of Need under N.J.S.A. 26:2H-7.
There is, however, an exemption from the Certificate of Need requirement for a physician's private practice. N.J.S.A. 26:2H-2b excludes from the definition of "health care service" those "services provided by a physician in his private practice, except as provided in [N.J.S.A. 26:2H-7]" (emphasis added). We interpret this "exception" to the physician's private practice exemption as requiring a Certificate of Need when a private physician initiates a health care service which is the subject of a health planning regulation adopted by the Department of Health. This interpretation is consistent with the definition of "health care service" in the Certificate of Need statute as well as the statute's waiver provisions. See N.J.S.A. 26:2H-7; ("A physician who initiates a health care service which is the subject of a health planning regulation ... may apply to the commissioner for a waiver of the certificate of need requirement....") See also N.J.A.C. 8:33-1.3 (substantially tracking the language of N.J.S.A. 26:2H-2b to define "health care service" but excluding "services provided by a physician in his or her private practice, unless the service is the subject of a health planning regulation....") Therefore, if the Woodbury facility is the subject of a health planning regulation discussed infra, it would not be exempt from the Certificate of Need requirement. The failure of the Acting Commissioner even to address this issue appears arbitrary. We therefore must remand for a determination on the applicability of N.J.S.A. 26:2H-7a and the physician's private practice exemption.
Likewise, the Acting Commissioner did not address the potential applicability of N.J.S.A. 26:2H-7b which requires a Certificate of Need for the initiation of "a health care service which is the subject of a health planning regulation adopted by the Department of Health." When N.J.S.A. 26:2H-7 was enacted, megavoltage *217 radiation oncology services were regulated by N.J.A.C. 8:33I-1 et seq. These regulations expired on September 15, 1991 pursuant to Executive Order No. 66 (1978), and the Department of Health had not yet enacted new regulations.[6] Plaintiff states that the Department was in the process of drafting new regulations and had imposed a moratorium on Certificate of Need applications until the new regulations were implemented. Defendants allege that since there were no regulations governing megavoltage radiation oncology services, N.J.S.A. 26:2H-7b was inapplicable. The State concedes that megavoltage radiation oncology services are a regulated activity, but argues that the Underwood facility is governed solely by N.J.S.A. 26:2H-7c and the July 1, 1991 exemption date. As previously noted, however, there is no indication that N.J.S.A. 26:2H-7c operates to the exclusion of the other sections of the statute. The Acting Commissioner's failure to address N.J.S.A. 26:2H-7b in light of its apparent applicability appears arbitrary. We therefore also remand for specific findings on the applicability of N.J.S.A. 26:2H-7b.
Finally, N.J.S.A. 26:2H-7e provides that a Certificate of Need is required for the "modernization, renovation or construction of a facility ... whose total project cost exceeds $1 million, if the facility-type is the subject of a health planning regulation adopted by the Department of Health." "Construction" is defined in N.J.S.A. 26:2H-2c as
the erection, building, or substantial acquisition, alteration, reconstruction, improvement, renovation, extension or modification of a health care facility, including its equipment, the inspection and supervision thereof; and the studies, surveys, designs, plans, working drawings, specifications, procedures, and other actions necessary thereto.
Under this broad definition, the activities of defendants could be considered construction and, as previously noted, the facility-type is the subject of a health planning regulation. The $1 million figure is the same as the Acting Commissioner assumed for his *218 N.J.S.A. 26:2H-2c exemption. Therefore without other findings, we cannot conclude that the cost of the facility is less than this amount. The Acting Commissioner's failure to address this section of the statute appears arbitrary, and we must remand for specific findings on the applicability of N.J.S.A. 26:2H-7e.

III
On this record we cannot find that the Woodbury facility requires a Certificate of Need as a matter of law. This decision is more appropriately left to the Department of Health's expertise and experience. Riverside Gen. Hosp. v. New Jersey Hosp. Rate Setting Comm'n, 98 N.J. 458, 468-69, 487 A.2d 714 (1985). If the Acting Commissioner had determined, with adequate factual findings, that N.J.S.A. 26:2H-7a, b, and e were inapplicable or that the private practice exemption to N.J.S.A. 26:2H-7a applied, we could have determined whether to uphold his decision. It is his failure even to address these sections in light of their apparent applicability which requires this remand.
Parenthetically, we note that plaintiff's economics argument raised in the reply brief has a built-in fallacy. Plaintiff claims that its facility at Cooper Hospital is under-utilized and that twenty percent of its patients will be diverted by this new facility in Woodbury. Thus, plaintiff argues, its facility will be more under-utilized and the cost to its patients will rise. It also contends that defendants' facility will be under-utilized and that patients will pay more. This seems to be a misstatement of the law of supply and demand. The operators of the facility may, of course, raise their prices in an attempt to cover fixed costs and maintain their current level of profits. If this is so, prices will rise. However, if two facilities are competing for the same business, and much of the business is controlled by insurance companies or HMO's, they will shop for the best prices and prices will fall in order to attract the business. If the demand stays the same and the supply increases, prices should drop unless they are artificially fixed.
*219 The issues addressed in this opinion shall be considered by the Commissioner on remand within 60 days of this opinion, and a decision shall be rendered, a copy of which shall be sent to Judges Dreier, Brochin and Kleiner at their respective chambers, with the original filed with the Clerk of the Appellate Division. Each party may similarly file a supplemental memorandum within 10 days of the receipt of the Commissioner's revised decision. We will thereafter render our final opinion.
Remanded for reconsideration and factual findings in accordance with this opinion. We retain jurisdiction.
NOTES
[1] On March 4, 1993, plaintiff filed a Motion to Settle and/or Supplement the Record pursuant to R. 2:5-5(a) and R. 2:5-5(b), seeking to include in the record the documents relevant to the proceeding in the Chancery Division. This motion was denied on April 13, 1993. Accordingly, the portions of plaintiff's appendix dealing with those documents have been suppressed.
[2] Cooper Hospital's motion to intervene as a party-appellant and to settle or supplement the record was denied.
[3] Cancer Therapy's brief was suppressed as it was not timely filed.
[4] Defendant Woodbury Medical Center Associates is not participating in this appeal.
[5] Apparently, Cancer Therapy Associates and Advanced Diagnostic Imaging Associates also formed a limited partnership, Radiation Therapy Associates of Gloucester County, L.P.
[6] New regulations have since been promulgated. See 24 N.J.R. 4222(a) (November 16, 1992) and 25 N.J.R. 701(a) (February 16, 1993).