**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4117-19

JOSHUA HALTER,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted April 13, 2021 – Decided May 27, 2021

Before Judges Moynihan and Gummer.

On appeal from the New Jersey Department of Corrections.

Joshua Halter, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Tasha Marie Bradt, Deputy Attorney General, on the brief).

PER CURIAM

While incarcerated, Joshua Halter was ordered to submit a urine sample after synthetic marijuana was found in his cellmate's sock. He appeals a final decision of the New Jersey Department of Corrections (NJDOC), finding he committed prohibited act *.259 (failure to comply with an order to submit a urine sample for prohibited-substance testing).[1] He argues the hearing officer's determination, which was upheld by the assistant superintendent, was not supported by substantial evidence and that his due-process rights were violated because he was not given two hours to produce a urine sample. We reverse because we cannot conclude from the record the disciplinary hearing officer considered all the evidence before her.

On March 27, 2020, at 9:00 a.m., an NJDOC officer observed Halter's cellmate acting suspiciously. The officer "pat searched" the cellmate and found two yellow pills in his pockets. The cellmate was searched again in a holding cell. When the cellmate removed his left sock, two packages wrapped in paper fell on the floor. The cellmate admitted the packages contained synthetic

---

[1] See N.J.A.C. 10A:4-4.1(a)(2)(xxvi). Prohibited acts preceded by an asterisk "are considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1(a).

marijuana, a controlled dangerous substance. Halter and their cell were searched; no prohibited substances were found.

At 9:15 a.m., the NJDOC officer gave Halter a written order requiring him to provide a urine sample of at least thirty milliliters[2] for drug testing. The order advised Halter that if he provided a smaller sample, he could be charged with prohibited act *.259. The order also informed Halter he had to provide a sample within two hours[3] or he could be charged with prohibited act *.258 (refusing to submit to testing).[4] At 10:15 a.m. the NJDOC officer requested approval for "pre-hearing disciplinary housing placement" for Halter. He checked the following reason for the request: "inmate has received a disciplinary charge and . . . there is a substantial possibility that the inmate will attempt to harm, threaten, or intimidate potential witnesses or that the inmate will attempt to organize or encourage others to harm, threaten, or intimidate potential witnesses." The request was granted. According to the NJDOC officer, Halter

---

[2] A urine sample must be a minimum of thirty milliliters "to ensure a sufficient quantity for all required testing." N.J.A.C. 10A:3-5.11(f)(1).

[3] See N.J.A.C 10A:3-5.11(i) (requiring an inmate be given a "reasonable physical opportunity" to comply with an order to submit a specimen and stating a "two-hour period from the time of the initial order" is "a reasonable physical opportunity" for "purposes of urine testing").

[4] See N.J.A.C. 10A:4-4.1(a)(2)(xxv).

ultimately "failed to provide a urine sample" within the two-hour time limit and was charged with committing prohibited act *.259.

The next day, Halter was served with the disciplinary report containing the *.259 charge. Because he was charged with an asterisk offense, he had the right to request representation by a counsel substitute pursuant to N.J.A.C. 10A:4-9.12. Halter requested and was given the assistance of a counsel substitute and pleaded not guilty.

The disciplinary hearing took place three days later. In support of the charge, NJDOC submitted: the order to provide a urine sample; a seizure-of-contraband report regarding Halter's cellmate; a request from the hearing officer to "medical," asking "was he on any medication that would prevent him from urinating?"; an email asking if Halter was "on any medication, or [had] any medical condition, that would prevent him from providing a urine sample within [two] hours" and a responding email from a doctor stating Halter did not suffer from any medical condition and was not prescribed any medication that would prevent him from producing urine in two hours; the preliminary incident report; the authorization form for prehearing disciplinary housing placement; a March 27, 2020 NJDOC medical report; and the disciplinary report stating the "infraction" took place at 11:20 a.m. NJDOC also submitted a "continuity of

evidence – on-site urine/saliva specimen testing" report. The person who completed the report stated the "[d]evice bag" was "inspected and opened" on March 27 and wrote a time next to the date. A reasonable factfinder could conclude the time was written as 11:10 a.m., or 11:20 a.m. or was changed from 11:10 a.m. to 11:20 a.m. The report contains a line for "[t]ime collected," which was left blank. The report also contains multiple lines for the printed names and signatures of NJDOC staff witnessing the collection, sealing, and reading of the specimen; all were left blank.

Halter provided the hearing officer with a statement, acknowledging he was told he had to provide a urine sample because of something his cellmate had done. Halter claimed: he had tried but "couldn't go because of his medication"; after the NJDOC officer had left the room and returned, he did not give Halter another opportunity to provide a sample; and the NJDOC officer did not give Halter two hours to produce a thirty-milliliter urine sample. Halter requested a statement from his cellmate, who said "I don't know nothing."

A typewritten version of the "adjudication of disciplinary charge" (ADC) form indicated three pages of "confrontation questions" were admitted into

evidence.[5]  A handwritten version completed by the hearing officer states "asked, none requested."[6]  The record does not include any confrontation questions or answers.  Counsel substitute signed the handwritten ADC form, confirming the information on the form "accurately reflects what took place at the inmate disciplinary hearing."

Determining the evidence supported the charge, the hearing officer concluded Halter was guilty of the *.259 charge.  The hearing officer found the order for the urine sample was given at 9:15 a.m., the "charge was written" at 11:20 a.m., and Halter had "no evidence to discredit [the] staff."  She sanctioned Halter to 150 days of administrative segregation, 90 days of loss of communication, 365 days of urine monitoring, 10 days of loss of recreation, and permanent loss of contact visiting privileges.  Noting Halter's previous

---

[5]  An inmate may request to confront NJDOC's witnesses by written questions. N.J.A.C. 10A:4-9.14.

[6]  Other discrepancies exist between the typewritten and handwritten versions of the form.  Both forms indicate the hearing was adjourned once for medical reasons.  The typewritten version states the hearing was adjourned again for "confrontation."  The handwritten version states notice of the disciplinary charge was delivered on March 28, 2020; the typewritten version states it was delivered on February 5, 2020.

A-4117-19

disciplinary history,[7] the hearing officer levied those sanctions on Halter to "deter" inmates "from failing to comply with [an] order to submit to testing for prohibited substances and to promote a safe and secure facility."

Halter administratively appealed the decision, asserting he has trouble urinating because of "chronic health issues" and medication he takes but "made every effort" to comply with the order; after struggling with being able to urinate, he was able to provide a urine sample but was told by the NJDOC officer it did not meet the minimum thirty-milliliter standard required by N.J.A.C. 10A:3-5.11(f)(1); while he was attempting to void his sample, the NJDOC officer standing behind him was "being belligerent, kept rushing me, and finally grabb[ed] my shoulder at one point telling me that I was done" in violation of N.J.A.C. 10A:3-5.11(h), which requires "[a]ll testing shall be accomplished in a professional and dignified manner with maximum courtesy and respect for the inmate's person"; and although the NJDOC officer had told him he had an hour left to provide the sample, he "never returned until they finally came to place me in restraints and tell me that I was receiving a charge for failing to void,"

---

[7] In 2019, Halter was found guilty of violating prohibited act *.204. See N.J.A.C. 10A:4-4.1(a)(2)(xvi) (use of any prohibited substances such as drugs, intoxicants, or related paraphernalia not prescribed for the inmate by the medical or dental staff).

thus violating his due-process right to a full two hours to comply with the order as required by N.J.A.C. 10A:3-5.11(i)(1). The assistant superintendent upheld the hearing officer's decision, finding NJDOC was "in compliance with procedural safeguards," the "sanction is appropriate to the charge," and leniency would not be afforded to Halter.

On appeal, Halter argues he was deprived of due process because he was not given two hours to provide a sample and because of that due-process violation, the hearing officer could not reasonably conclude substantial evidence supported a finding Halter had failed to comply with the order to provide a sample. In response, NJDOC argues Halter had the assistance of a counsel substitute and had been given the opportunity to make a statement and review all the evidence considered and that the hearing officer's finding of guilt was supported by substantial credible evidence in the record.

Our review of an administrative agency's final decision is limited. Commc'ns Workers of Am., AFL-CIO v. N.J. Civ. Serv. Comm'n, 234 N.J. 483, 515 (2018). We will not reverse an agency's decision unless "(1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the

record." Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007).

In an appeal from a final NJDOC decision in a prisoner disciplinary matter, we consider whether there is substantial evidence in the record to support the decision the inmate committed the prohibited act. Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 237-38 (App. Div. 2019); see also N.J.A.C. 10A:4-9.15(a) ("finding of guilt at a disciplinary hearing shall be based upon substantial evidence"). "Substantial evidence" has been defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." In re Hackensack Water Co., 41 N.J. Super. 408, 418 (App. Div. 1956); see also Figueroa v. N.J. Dep't of Corrs, 414 N.J. Super. 186, 192 (App. Div. 2010). We also must consider whether, in making its decision, NJDOC followed the departmental regulations governing disciplinary proceedings, which were adopted to afford inmates procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995); Jacobs v. Stephens, 139 N.J. 212, 219-22 (1995).

The hearing officer found Halter had "no evidence to discredit [the] staff." Two pieces of evidence in the record potentially raise questions as to whether Halter received two hours to produce a sample: the authorization form for prehearing disciplinary housing placement, which was submitted at 10:15 a.m.

when Halter still had an hour left to comply with the 9:15 a.m. order, and the unsigned "continuity of evidence" report, with the unclear handwritten time.

It is possible the hearing officer considered the times in the authorization form and "continuity of evidence" report and determined the NJDOC officers were more credible than Halter. But she made no express credibility determinations in her decision and did not address the times contained in the authorization form and "continuity of evidence" report. Thus, we cannot discern whether she considered all of the evidence before her.

Our deference to an agency decision is not limitless. We are not required to forgo

> a careful review of administrative decisions simply because an agency has exercised its expertise. We cannot accept without question an agency's conclusory statements, even when they represent an exercise in agency expertise. The agency is "obliged . . . 'to tell us why.'" In re Valley Hosp., 240 N.J. Super. 301, 306 (App. Div. 1990) (quoting Drake v. Human Servs. Dep't, 186 N.J. Super. 532, 538 (App. Div. 1982)), certif. denied, 126 N.J. 318 (1991).
>
> We have repeatedly stated that while an administrative decision is entitled to deference, we will not perfunctorily review and rubber stamp the agency's decision. Blackwell v. Dep't of Corr., 348 N.J. Super. 117, 123 (App. Div. 2002) (citing Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000)). Instead, we insist that the agency disclose its reasons for any decision, even those based upon expertise, so

that a proper, searching, and careful review by this court may be undertaken.

[Balagun v. N.J. Dep't of Corr., 361 N.J. Super. 199, 202-03 (App. Div. 2003).]

Accordingly, we reverse because the hearing officer did not fully state her findings regarding her consideration of all of the record evidence. On remand, the disciplinary hearing officer shall consider all of the evidence and issue a supplemental decision setting forth her credibility determinations and addressing the information contained in the authorization form for prehearing disciplinary housing placement and "continuity of evidence" report.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION