959 A.2d 885 (2008)
403 N.J. Super. 562
MAINLAND MANOR NURSING & REHABILITATION CENTER, Appellant,
v.
NEW JERSEY DEPARTMENT OF HEALTH & SENIOR SERVICES, Respondent.
DOCKET NO. A-4438-06T2.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 2008.
Decided November 17, 2008.
*887 Cindy M. Perr, argued the cause for appellant (Gluck, Walrath LLP, attorneys, Trenton; Ms. Perr and Andrew P. Aronson, on the brief).
Rachana R. Munshi, Deputy Attorney General, argued the cause for respondent (Anne Milgram, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Ms. Munshi, on the brief).
Before Judges SKILLMAN, GRAVES and GRALL.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
On April 21, 2003, respondent Department of Health and Senior Services (DHSS) published a "notice of invitation for certificate of need applications for specialized long-term care beds to provide ventilator care for adult residents." 35 N.J.R. 1739(c). The call identified a need for 154 such beds distributed among fifteen counties, and listed the bed need for each county, calculated through 2005. Ibid. The bed need for Atlantic County was set at ten. Ibid.
Three nursing facilities filed applications with the DHSS for a certificate of need to meet the need for long-term ventilator care beds in Atlantic County: appellant Mainland Manor (Mainland) in Pleasantville, Eastern Pines Convalescent Center (Eastern Pines) in Atlantic City, and the Health Center at Galloway (Galloway) in Absecon.
The State Health Planning Board (SHPB) considered Mainland's application, along with the others received in response to the April 21, 2003 call, at a formal meeting held on May 5 and 6, 2005. After hearing testimony from a representative of Mainland and considering the recommendations of DHSS staff, the SHPB voted unanimously to recommend denial of the application. At the same meeting, the SHPB voted unanimously to recommend the denial of Galloway's application and the grant of Eastern Pines' application. On September 23, 2005, Commissioner Jacobs adopted the SHPB's recommendations, and accordingly, denied Mainland's and Galloway's applications and granted Eastern Pines' application.
On October 21, 2005, Mainland requested an administrative hearing regarding the denial of its application for a certificate of need. However, Mainland did not appeal from the Commissioner's grant of a certificate of need to Eastern Pines to install the ten long-term ventilator care beds that the DHSS had determined to be needed in Atlantic County.
*888 The DHSS transferred the matter to the Office of Administrative Law (OAL) as a contested case. Because Mainland had not challenged Eastern Pines' application for a certificate of need, Eastern Pines did not participate in the proceedings before the OAL.
The DHSS and Mainland brought the matter before an Administrative Law Judge (ALJ) by cross-motions for summary decision. These motions were supported by voluminous documentary materials, including an extensive analysis of the Mainland, Eastern Pines and Galloway applications by DHSS staff, which concluded with a recommendation that the Mainland and Galloway applications should be denied and that Eastern Pines' application should be granted. The record before the ALJ also included testimony before the SHPB by John Calabria, the DHSS's Director of Certificate of Need and Acute Care Licensure, who explained the staff review process and the basis of the DHSS staff's recommendations. In addition, there was testimony presented before the SHPB by a representative of Mainland and by one of the owners and a consultant for Eastern Pines.
Based on this evidence, the ALJ concluded that, on a comparative basis, Mainland's application was superior to Eastern Pines' application. The ALJ found that Eastern Pines' financial situation was much weaker than Mainland's and that the Commissioner should have explored this issue in greater detail:
Eastern Pines['] financial status was much weaker than that of Mainland. Eastern Pines had net losses for 2002 ($655,442) and 2001 ($540,456). The losses are increasing not decreasing year after year. The audited financial statements provided to this tribunal were only for the period 2001 and 2002. Eastern Pines' financial situation should have been explored in greater detail. If Eastern Pines had losses in the years prior to 2001 and subsequent to 2002, it raised significant "going concern" issues. Indeed, the Commissioner concluded that Mainland had superior financial strength over Eastern Pines. And, the Commissioner concluded that Eastern Pines' financial status was questionable. This weakness should have been evaluated in much greater detail.
The ALJ also concluded that the Commissioner had erred in deciding that the issue of patient accessibility favored Eastern Pines, noting that "[p]atients on ventilator beds are transported from a critical care facility to the LTCF by ambulance." Regarding access by family members, the ALJ concluded that Pleasantville, where Mainland is located, is "clearly more accessible [than Atlantic City, where Eastern Pines is located] because of its central locale in the county." The ALJ also found that "there is no evidence that Atlantic City residents have a greater need for ventilator beds than the remaining residents in the greater Atlantic County area."
In addition, the ALJ concluded that the Commissioner had erred in deciding that Eastern Pines' application was superior because Eastern Pines had expressed a willingness to provide hemodialysis to ventilator care patients but Mainland had declined to give such a commitment:
[T]he Commissioner gave a preference to Eastern Pines in response to a question regarding hemodialysis. The applicants were asked if they were willing to commit to providing hemodialysis to the ventilator bed patients. Eastern Pines answered "yes" and Mainland "no." There was very little in the way of analysis of this condition beyond the question itself. And, the need for hemodialysis and ventilator beds is questionable, at least as the record was developed to *889 date. The Commissioner relied upon anecdotal evidence to support this condition. The Commissioner states "there are no statistics collected in New Jersey to quantify the number of ventilator-dependent individuals who require hemodialysis. . . . Consequently, the need. . . for both ventilator beds combined with hemodialysis was undocumented and un-supported by competent evidence." But, the Commissioner gave significant weight to the applicants who answered "yes" to this question. Eastern Pines was given preference while Mainland was not for a service that was clearly undetermined. Eastern Pines was not required to provide any substantiation of its means to offer hemodialysis, even if it is needed. A "yes" answer was the only requirement. The incorporation of this condition, in the absence of any further analysis, approaches arbitrary and capricious decision-making.
Mainland urges that providing hemodialysis in a LTCF is not medically prudent and unsafe. (See report of Dr. Carl S. Goldstein, Chief of Nephrology, Overlook Hospital, certification of Counsel, exhibit B). I am mindful that Dr. Goldstein's certification was offered after the close of the record before the Commissioner but, it raises serious public health and safety concerns that were not evaluated. Public safety must remain paramount in spite of procedural rules. I would not give a preference to an undocumented need based solely on anecdotal information, where the risk of the patient service has not been fully investigated. This becomes more problematic where the facility is experiencing financial challenges.
The only factor the ALJ identified that favored Eastern Pines' application over that of Mainland was access on a "social-economic basis." The ALJ stated with respect to this factor:
Eastern Pines accepts eighty-five percent direct Medicaid patients while Mainland accepts only [] sixty-five percent direct Medicaid patients for ventilator beds. Eastern Pines has a sixty percent minority population while Mainland has a forty-three percent minority population.
However, regarding the economic aspect of access, the ALJ also noted that "most patients end up being converted to either Medicaid or Medicare because of the enormous cost associated with ventilator bed care."
Despite finding that the Mainland application for a certificate of need was superior to that of Eastern Pines, the ALJ concluded that the Commissioner's decision was not arbitrary and capricious. In reaching this conclusion, the ALJ stated:
Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached.
The Commissioner's final decision denying Mainland's application did not reject any of the ALJ's factual findings or conclusions of law. The Commissioner simply stated:
[P]etitioner failed to support its contentions that both the Commissioner's denial of the CN for long-term ventilator care beds and the A.L.J.'s Initial Decision [were] arbitrary, capricious and unreasonable. To the contrary, the established record in this case unequivocally demonstrated these decisions were based upon sufficient credible evidence and consistent with the legislative purpose. For these reasons, I concur with Judge Miller's recommendations in the Initial Decision to grant the Department's *890 motion for summary decision as a matter of law.
We conclude that the Commissioner's final decision is not justified based on the ALJ's findings of fact and conclusions of law, which the Commissioner seemingly adopted, and that the decision is not sustainable on the present record.
Initially, we consider the consequences of Mainland's failure to appeal from the Commissioner's grant of a certificate of need to Eastern Pines. If Eastern Pines had purchased and installed the ten ventilator care beds authorized by its certificate of need, this appeal probably would have become moot, at least in the absence of any indication that there is a need for more than ten such beds in Atlantic County. See Holy Name Hosp. v. N.J. Health Care Admin. Bd., 258 N.J.Super. 411, 418-19, 609 A.2d 1305 (App.Div.1992). However, when we inquired at oral argument about the status of Eastern Pines' purchase and installation of those beds, counsel for DHSS advised us that Eastern Pines had not even applied for the license required for it to undertake this new medical service. Moreover, at the time of the hearing before the OAL, there were substantial questions raised concerning Eastern Pines' financial condition. We do not know whether Eastern Pines has delayed more than three years since obtaining the certificate of need without moving forward to purchase and install the ten long-term ventilator care beds needed in Atlantic County because of that financial condition or for other reasons.[1] However, this delay creates sufficient doubt whether Eastern Pines will satisfy Atlantic County's need for long-term ventilator care beds for us to conclude that Mainland's failure to appeal from the grant of that certificate of need does not moot this appeal.
The role of a court in reviewing administrative agency decisions is limited. Univ. of Med. & Dentistry of N.J. v. Grant, 343 N.J.Super. 162, 168, 778 A.2d 473 (App.Div.2001). An administrative agency decision will not be disturbed absent a showing that it is arbitrary, capricious or unreasonable, lacks fair support in the evidence, or violates legislative policies. Ibid.
Despite this deferential standard, "[a]ppellate courts cannot exercise their duty of review unless they are advised of the considerations underlying the administrative determination." In re Application of Holy Name Hosp., 301 N.J.Super. 282, 292, 693 A.2d 1259 (App.Div.1997). Consequently, "[i]t is the agency head's obligation. . . to state the basis of decision with clarity; and, with sufficiency, to articulate the factual determinations and legal standards that inform the action taken." In re Certificate of Need Application of Arnold Walter Nursing Home, 277 N.J.Super. 472, 479, 649 A.2d 1319 (App. Div.1994).
In addition, an administrative agency must conduct an independent evaluation of all relevant evidence and legal arguments presented in support of and in *891 opposition to proposed administrative agency action, such as the approval of a certificate of need. See In re Virtua-W. Jersey Hosp., 194 N.J. 413, 424-36, 945 A.2d 692 (2008). The failure to do so may make the agency's decision arbitrary and capricious and require a remand for reconsideration. Ibid. Thus, in choosing among competing certificates of need, the Commissioner must "relate, with adequate particularity, the comparative evaluation of the applicants, based on all the criteria at issue, and articulate why [one] application, both with respect to singular aspects and on the whole, better satisf[ies] the goals sought by the applicable statutes or regulations than do others." In re Arnold Walter Nursing Home, supra, 277 N.J.Super. at 481, 649 A.2d 1319.
The Commissioner failed to discharge this responsibility in denying Mainland's application. The ALJ's decision, the pertinent parts of which are quoted at length earlier in this opinion, pointed strongly in favor of the conclusion that Eastern Pines' application should have been denied and that Mainland's application should have been granted. Indeed, we question whether the ALJ's findings of fact and conclusions of law can be reconciled with his ultimate conclusion that the Commissioner's initial decision was not arbitrary and capricious.
In any event, when the matter was returned to the Commissioner for a final decision, he had an obligation to consider Mainland's application de novo. The Commissioner is not simply a reviewing agency or court. He is the public official to whom the Legislature has delegated responsibility to make the final decision regarding the issuance of a certificate of need. See N.J.S.A. 26:2H-9; see also N.J.A.C. 8:33-4.15(c). Thus, if Mainland's "application was superior to Eastern Pines[,]" as the ALJ had concluded, the Commissioner was obligated to grant that application. Consequently, to deny Mainland's application, the Commissioner was required to give a reasoned explanation of why he disagreed with the ALJ's findings and conclusions. Instead of doing this, however, the Commissioner seemingly adopted the ALJ's initial decision that pointed strongly in favor of granting Mainland's application, but then turned around and denied the application by invoking the arbitrary and capricious standard to review his own preliminary decision. Therefore, we must remand the matter to the current Commissioner for her to reconsider this matter de novo.
In remanding, we reiterate that the ALJ's findings and conclusions seem to strongly support the granting of Mainland's application. However, those findings also warrant a remand to the ALJ for the presentation of additional evidence and new findings of fact. The ALJ concluded that Eastern Pines' questionable financial condition "should have been evaluated in much greater detail[]" by the Commissioner. Upon reaching this conclusion, the ALJ should have taken testimony on the issue even though the matter had been presented to him by cross-motions for summary decision. Upon remand, such testimony should now be adduced. The ALJ should also hear evidence concerning the current status of Eastern Pines' efforts to purchase and install the ten long-term care ventilator beds authorized by its certificate of need and consider the relevancy of that evidence to the denial of Mainland's application.[2]
In addition, the ALJ concluded that "the need . . . for . . . ventilator beds combined with hemodialysis was undocumented and *892 unsupported by evidence" and that the Commissioner should not have "give[n] a preference to an undocumented need based solely on anecdotal information, where the risk of the patient service has not been fully investigated." Upon reaching this conclusion, the ALJ should have required the presentation of evidence regarding the need for hemodialysis to be provided in combination with a ventilator bed and the safety of this patient service. Such evidence should now be presented on remand.
Accordingly, the matter is remanded to the Commissioner for referral to the OAL and reconsideration in conformity with this opinion. Because this matter involves a need for additional ventilator beds that was first identified in 2003 and is still unmet, the proceeding on remand should be expedited. We direct that those proceedings be completed by March 12, 2009. Jurisdiction is not retained.
NOTES
[1] DHSS's counsel noted at oral argument that the regulations governing the certificate of need program give an applicant five years within which to complete the steps required to undertake the new medical service authorized by the certificate, unless the call for certificate of need applications or other public notice by the Commissioner specifies a lesser period. See N.J.A.C. 8:33-3.10(a)(1). Although we can understand why a successful applicant for a certificate of need authorizing the construction of a substantial new facility, such as a hospital or nursing home, would require five years or even longer to complete the facility, it is difficult to perceive any reason why that long a period of time would be necessary for purchasing and installing the beds authorized by Eastern Pines' certificate of need.
[2] We note that the regulations governing the certificate of need program provide that "[i]f the Department determines that the holder of an unimplemented certificate is not making a good faith effort to implement the project, the Commissioner may null and void the certificate." N.J.A.C. 8:33-4.15(f).