**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1421-24
      A-1425-24

SHAWN P. FLANNERY,

  Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR
AND WORKFORCE
DEVELOPMENT and SOUTH
STATE, INC.,

  Respondents.

_____

Submitted May 5, 2026 – Decided May 20, 2026

Before Judges Perez Friscia and Vinci.

On appeal from the Board of Review, Division of Unemployment Insurance, Department of Labor and Workforce Development, Docket Nos. 317256 and 317257.

O'Brien Belland & Bushinsky, LLC, attorneys for appellant (David H. Lipow, on the briefs).

Jennifer Davenport, Attorney General, attorney for respondent Board of Review (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Christopher J. Chiacchio, Deputy Attorney General, on the briefs).

Testa Heck Testa & White, PA, attorneys for respondent South State, Inc. (Todd W. Heck, on the briefs).

PER CURIAM

In these related appeals, which we consolidated for the purpose of issuing a single opinion, claimant Shawn P. Flannery appeals from two December 4, 2024 final decisions of the Board of Review (Board) finding him liable for non-fraud refunds of unemployment benefits. For the reasons that follow, we vacate and remand for the Board to make additional findings and explain the basis for its determination of the amount of the overpayments, if any, Flannery is liable to refund. On remand, the Board shall also address Flannery's claim that he is entitled to a waiver of recovery of an overpayment of benefits pursuant to N.J.A.C. 12:17-14.2(a) and N.J.S.A. 43:21-16(d)(3)-(5).

I.

We summarize the facts developed during the three-day telephonic hearing before the Appeal Tribunal. Flannery testified that he is a laborer who was temporarily laid off by his employer, South State, Inc. (South State), for approximately fifteen weeks between November 2020 and April 2022.

2

On March 15, 2020, Flannery initiated a claim with the Division of Unemployment and Temporary Disability Insurance (Division) for unemployment benefits (Claim I). Prior to November 2020, he applied for and received unemployment benefits during calendar year 2020 for the week ending August 15, 2020. He was thereafter employed by South State from approximately August 16, 2020, until November 22, 2020.

Before November 2020, Flannery certified his eligibility for unemployment benefits electronically using the internet. On November 28, 2020, Flannery attempted to certify his eligibility for unemployment benefits but was unable to use the internet reporting system. Instead, he certified that he was eligible for benefits using the Division's telephonic reporting system.

When he attempted to certify his eligibility for benefits for the week ending November 28, 2020, the telephonic system directed him to certify his eligibility for the week ending August 22, 2020, because his last claim for benefits was for the week ending August 15, 2020. Flannery attempted to correct the error but was unable to do so. As a result, he was paid unemployment benefits for the week ending November 28, 2020, but the Division's records incorrectly indicated the benefits were paid for the week ending August 22, 2020, when he was employed.

This same error was repeated when he used the telephonic reporting system to certify his eligibility for benefits for the weeks ending December 5, 12, 19, and 26, 2020, and January 2 and 9, 2021. The Division's records incorrectly reflected that those claims for benefits were paid for the weeks ending August 29, September 5, 12, 19, and 26, and October 3, 2020. It is undisputed Flannery was employed during those periods.

Flannery was unemployed again from August 15 through September 11, 2021. On August 21, 2021, he used the telephonic reporting system to certify his eligibility for benefits for the week ending August 21, 2021. Once again, the system defaulted to October 3, 2020, and those benefits were incorrectly paid as benefits for the week ending October 3, 2020, when Flannery was employed.[1] The same error was repeated when Flannery certified his eligibility for benefits for the weeks ending August 28, and September 4, and 11, 2021. Those benefits were incorrectly paid as benefits for the weeks ending October 10, 17, and 24, 2020, when Flannery was employed.

Flannery was unemployed from December 26, 2021, through January 1, 2022. On January 1, 2022, he used the telephonic system to certify his eligibility

---

[1] It is not clear in the record why this was recorded as the week ending October 3, 2020, rather than October 10, 2020. That contradiction should be resolved, if possible, on remand.

A-1421-24

for benefits for the week ending January 1, 2022. Those benefits were paid for the week ending October 31, 2020, when Flannery was employed.

All the unemployment benefits Flannery received for the period November 28, 2020, through January 1, 2022, were incorrectly paid by the Division as unemployment benefits paid for the period August 22, 2020, through October 31, 2020, and are all included as benefits paid under Claim I.

On August 1, 2021, Flannery initiated a second claim for benefits (Claim II). Flannery was unemployed for all or part of the periods January 9 through 22, 2022, and April 3 through 9, 2022. On January 15, 2022, Flannery used the telephonic reporting system to certify his eligibility for benefits for the week ending January 15, 2022. For reasons that are not explained in the record, those benefits were paid for the week ending August 14, 2021, when he was employed. On January 22, 2022, Flannery certified his eligibility for benefits for the week ending January 22, 2022, which was paid as benefits for the week ending December 25, 2021, when he was employed. On April 9, 2022, Flannery certified his eligibility for benefits for the week ending April 9, 2022, which were paid as benefits for the week ending January 8, 2022, when he employed.

Flannery testified he made numerous attempts to contact the Division to correct the errors but was unable to contact a representative. Eventually, he

A-1421-24

"spoke to a woman . . . that summer . . . and tried to straighten this out."  He was "on the phone with [the representative for] over an hour."  She "put [him] on hold, came back" and said she "ha[d] everything on the computer here.  [She saw] what[ was] going on" and was "going to correct it."  The representative told him she "went and corrected everything for [him].  [He] d[id not] have to worry about" anything.

On October 11, 2022, the Director of the Division issued a determination and demand for refund of unemployment benefits.  The Director determined Flannery "improperly received unemployment benefits for which [he] w[as] not eligible due to being employed by [South State]."  As to Claim I, the Director determined Flannery owed $7,843 in overpayments and a penalty of $1,960.75.  As to Claim II, the Director determined Flannery owed $2,193 in overpayments and a penalty of $548.25.  The Director also imposed a disqualification from unemployment benefits from October 11, 2022, through October 10, 2023 "due to false or fraudulent misrepresentation."

Flannery appealed from the Director's determination and the Appeal Tribunal conducted a telephonic hearing on January 9, March 15, and September 20, 2023.  On September 20, 2023, the Appeal Tribunal issued two decisions affirming the Director's determination as to Claims I and II.  The Appeal

Tribunal determined Flannery "did not report his wages for all of the weeks in question" and "worked for [South State] for all of the weeks in question." The Appeal Tribunal rejected Flannery's claim that "he did not properly report the wages because he was attempting to collect for a different period of time, and was paid for the wrong weeks by the [D]ivision." It concluded "[t]he receipt of these benefits is considered to be as a result of false or fraudulent representation."

On October 10, 2023, Flannery appealed to the Board. On December 4, 2024, the Board issued its final decisions modifying the Appeal Tribunal's decisions. In its findings of fact applicable to both final decisions, the Board found:

> [Flannery] attempted to claim benefits for the periods of his temporary layoffs, via telephone and online, however, when certifying for benefits, [he] was directed to the last week he had previously certified for and was unable to correct the dates. [Flannery] made numerous attempts to the Division to rectify the matter, but was not able to reach a Division representative until the Summer of 2021, at which time he was instructed the matter would be rectified.

The Board determined it was

> compelled to supplement the [f]indings of [f]act of the Appeal Tribunal . . . to more sufficiently reflect the record. [The Board] disagree[d] with the Appeal Tribunal's conclusion that [Flannery] knowingly

7

withheld material facts in an attempt to receive unemployment benefit payments to which he was aware he was not entitled. [Flannery] filed the claim solely to collect benefits due to the loss of income resulting from his temporary layoff by the employer. [Flannery] was unaware of how to correct the weeks he was seeking to certify for and sought assistance from the Division. Therefore, [Flannery] did not knowingly make false statements, nor did he withhold any material facts, in an attempt to receive benefit payments. The fact that [Flannery] only received benefits for the approximate same number of weeks he was laid off tends to strongly support the conclusion that [he] did not willfully or knowingly defraud the Division. Since the [Flannery]'s receipt of the benefits was not a result of fraud or fraudulent misrepresentation, [he] is not disqualified for a period of one year from October 11, 2022, as provided by N.J.S.A. 43:2l-5(g)(1), and no fine . . . applies, in accordance with N.J.S.A. 43:21-16(a).

Despite its determination that the dates included in Flannery's certifications for benefits were incorrect, the Board calculated the amount of his alleged liability for a non-fraud refund based on those incorrect dates. As to Claim I, the Board determined Flannery "received an overpayment of benefits for all of the relevant weeks" because he was employed. For the weeks ending October 17 and October 31, 2020, it determined he was eligible for "partial unemployment benefits of $36[]" and "received an overpayment of $677[] for each of those weeks." The Board determined Flannery was "liable for a non-fraud refund in the sum of $7,771[], received as benefits for the weeks ending

August 22, 2020[,] through October 31, 2020, in accordance with N.J.S.A. 43:21-16(d)."

As to Claim II, the Board determined Flannery was obligated to refund the full amount he received for the week ending January 8, 2022. It determined he was "eligible for partial unemployment benefits of $173 each week" for the weeks ending August 14, 2021, and December 25, 2021. The Board determined he was liable for a non-fraud refund of $1,847 in connection with Claim II. This appeal followed.

II.

On appeal, Flannery contends the Division should be estopped from requiring a non-fraud refund of the alleged overpayment. He argues it was the Division's "automated system . . . that generated the incorrect dates" and it "took months for the [Division] to respond to [his] multiple requests for assistance in correcting the issue." "When it finally did respond, [the Division's] representative falsely told [him] that she would correct the issue." Flannery argues "it is undisputed [he] only claimed and received benefits for the number of weeks he was unemployed and, therefore, entitled to [b]enefits."

Flannery also argues "at the core of this appeal is [his] position that the Board arbitrarily determined [his] eligibility" for benefits "based on his work

history on the dates the Board had already determined were inaccurate and not reflective of [his] period of unemployment." "The Board correctly referred to [his] work history on the dates it determined [he was] unemployed," but then "arbitrarily used data from the incorrect dates recorded by the [Division] to determine" his eligibility for benefits and liability for a non-fraud refund.

He contends the Board's "determination of overpayment" should be reversed "because the Board arbitrarily utilized data it acknowledged was inaccurate to determine an overpayment." Flannery also argues we should remand the matter to the Board to consider his argument, raised for the first time on appeal, that he was entitled to a waiver of recovery for an overpayment of benefits pursuant to N.J.A.C. 12:17-14.2(a) and N.J.S.A. 43:21-16(d)(3)-(5).

III.

An appellate court's review of an administrative agency decision is narrow. Sullivan v. Bd. of Rev., Dep't of Lab., 471 N.J. Super. 147, 155 (App. Div. 2022). In matters involving unemployment benefits, appellate courts afford deference to the Board's expertise in administrating the Unemployment Compensation Law (UCL), N.J.S.A. 43:21-1 to -71. Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). We will not reverse an agency's decision unless it is "arbitrary, capricious, or unreasonable or . . . not supported by substantial

credible evidence in the record." In re Ambroise, 258 N.J. 180, 197 (2024) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).

Importantly, our ability to resolve an appeal from a final decision is largely dependent upon the administrative agency clearly and adequately stating its reasons, legal standards, and conclusions reached. N.J.S.A. 52:14B-10(d) (the final decision must "include findings of fact and conclusions of law, separately stated and . . . based only upon the evidence of record at the hearing"). "Where the agency record is insufficient, we may order a remand to the agency to more fully develop the record." ACLU of N.J. v. Hendricks, 233 N.J. 181, 201 (2018); see also Noble Oil Co. v. Dep't of Env't Prot., 123 N.J. 474, 475 (1991) (remanding to supplement an inadequate record).

Indeed, "[a]ppellate courts cannot exercise their duty of review unless they are advised of the considerations underlying the administrative determination." Mainland Manor Nursing & Rehab. Ctr. v. New Jersey Dep't of Health & Senior Servs., 403 N.J. Super. 562, 571 (App. Div. 2008) (alteration in original) (quoting In re Application of Holy Name Hosp., 301 N.J. Super. 282, 292 (App. Div. 1997)). "Consequently, '[i]t is the agency head's obligation . . . to state the basis of decision with clarity; and, with sufficiency, to articulate the factual determinations and legal standards that inform the action taken.'"

Ibid. (alteration in original) (quoting In re Certificate of Need Application of Arnold Walter Nursing Home, 277 N.J. Super. 472, 479 (App. Div. 1994)).

We are convinced remand is appropriate for the Board to clearly explain the basis for its determination that Flannery is liable for a non-fraud refund. In its decisions, the Board recognized Flannery attempted to certify his eligibility for benefits correctly for weeks that he was unemployed. However, he "was directed" by the Division's telephonic certification system "to the last week he had previously certified for and was unable to correct the dates." The Board found Flannery "filed the claim solely to collect benefits due to the loss of income resulting from his temporary layoff by the employer."

In spite of its finding that the dates recorded by the Division's telephonic certification system were incorrect, the Board used those incorrect dates to determine the alleged overpayments. Specifically, the Board compared the benefits Flannery received to the benefits he would have received for the weeks he incorrectly certified rather than comparing the benefits he received to the benefits he was entitled to and would have received for the weeks he was totally or partially unemployed.

Based on the Board's findings, it follows that the alleged overpayments to Flannery should have been determined by comparing the amount he received to

12

the amount he was entitled to and should have received for the weeks he was unemployed. In other words, whether he received more than he was entitled to and was "overpaid."

Without a clear explanation of the rationale that informed the Board's decision to calculate the amount of the alleged overpayment based on the incorrect dates, we are unable to appropriately exercise our duty to review the final decisions. Accordingly, we vacate the final decisions and remand for the Board to re-issue final decisions clearly setting forth the reasoning supporting its calculation of the alleged overpayments and non-fraud refund liability.

We decline to address Flannery's estoppel argument because it would be premature to do so until the amount of his non-fraud refund liability, if any, is determined. Finally, Flannery contends he is entitled to a waiver of recovery of an overpayment pursuant to N.J.A.C. 12:17-14.2(a) and N.J.S.A. 43:21-16(d)(3)-(5). The question of a refund waiver "should be decided in the first instance, by the Division, applying its expertise." Mullarney v. Bd. of Rev., 343 N.J. Super. 401, 410 (App. Div. 2001). On remand, the Board shall determine whether Flannery is entitled to a waiver of recovery.

Vacated and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

13                                                                           A-1421-24